In re WAYNE PUMP CO.

District Court, N. D. Indiana,
Fort Wayne Division.
Feb. 8, 1935.

James R. Fleming and Willard Shambaugh, both of Fort Wayne, Ind., and Hays, Wolf, Kaufman & Schwabacher, of New York City, for Wayne Pump Co.

Peabody, Westbrook, Watson & Stephenson, of Chicago, Ill., Moot, Sprague, Marcy, Carr & Gulick, of Buffalo, N. Y., and Pickens, Gause, Gilliom & Pickens, of Indianapolis, Ind., for bondholders' protective committee.

SLICK, District Judge.

A petition was filed on June 9, 1934, by the Wayne Pump Company, a corporation organized under the laws of Maryland, alleging that the company was unable to meet its obligations as they matured, and desired to effectuate a reorganization under section 77B of the Bankruptcy Act (11 USCA § 207). The petition was approved as properly filed June 11, 1934.

On September 7th an order was made permitting Mr. John H. Farley of Minneapolis, Mr. Charles C. Wells, of Chicago, and Mr. Robert M. Weidenhammer of New York City, members of a debenture bondholders' protective committee, to intervene. Later Mr. David L. Landy of Buffalo was added to this committee, and Mr. Maurice P. Angland of Minneapolis acted as its secretary. So far as it appears of record, none of the members of this committee owned any of the bonds or stock of the corporation proposing the reorganization.

The court is now asked to allow fees and expenses to the company's counsel, the members of the debenture bondholders' protective committee, and its counsel, special masters' fees and expenses, and some other expenses, all in reference to the reorganization.

It is a serious question how far a volunteer committee is justified in making charges for services and expenses, but this at least may be positively stated, that the true basis of all allowances is the value of the service rendered.

The committee started out to oppose the plan of reorganization, and solicited bondholders to co-operate with them and withhold consents to the reorganization proposed, and revoke powers of attorney already granted. Some of its members traveled quite extensively, employed counsel, and made many other expenditures.

The counsel employed by the committee were Peabody, Westbrook, Watson & Stephenson of Chicago; Pickens, Gause, Gilliom & Pickens of Indianapolis; and Moot, Sprague, Marcy, Carr & Gulick, with whom Committeeman Landy is associated, of Buffalo. The committee has presented claims for its own fees and expenses, and the fees and expenses of its counsel, in the sum of $50,464.95, and the counsel fees requested by counsel for the company, including all other expenses, total $40,785.26, making a grand total of counsel fees, committee fees, and expenses to this estate asked in the sum of $91,250.21.

The attitude of counsel for the committee after the first brush or two in court was conciliatory and constructive, and, regardless of the motives of the committee, resulted in a compromise reorganization beneficial to the company, and not prejudicial to the rights of the bondholders. The activities of the law firms were of great value to the estate. Bad advice at this point in the proceedings could very easily have resulted in prolonged litigation with possible appeals and unpreventable delays, which would in all probability have destroyed the very purpose of the act and the reorganization proceedings.

The court is persuaded that counsel, when acting in good faith, should be encouraged to advise and persuade clients whenever possible to assist in, and co-operate with, an honest endeavor to reorganize an industry, and that they should be assured by the courts that such constructive conduct on their part will meet with reward commensurate with the character of the assistance rendered and the results obtained, rather than that such counsel will be penalized for shortening, instead of prolonging, the court procedure.

On the other hand, the hasty organization of so-called "protective committees" who volunteer advice to bondholders and solicit holders of securities not to go along with a company reorganization, suggesting a better method to be proposed and advising the revocation of assents already made, as was done in this case, should, to say the least, be scrutinized carefully by the court when asked to make liberal allowances to the members of such volunteer committee.

■ A very much smaller committee composed of members living in closer contact with each other could have functioned as effectively, and, in all probability, more efficiently, and with much greater economy, than did this committee whose members were located in Minneapolis, Chicago, Buffalo, and New York City. If members of a protective committee expect to ask the court for reimbursement of expenses, they must exercise discretion and judgment in creating that expense. At least the same degree of care must be used as if the committeemen were expending their own money. It is entirely too easy to spend the company's money and leads to extravagance and unnecessary travel, as well as to the doing of other unnecessary things. The record discloses that the committee met several times, spent some days discussing the proposed plan and suggesting modifications, and then turned the matter over to their counsel. The committeemen were present in court when the compromise plan was presented, but it does not appear that their presence was necessary. They were not called to testify.

It might be well to remind all claimants that this procedure is under an act of Congress designated "An act for the relief of debtors." If relief is to be extended, it must be real and not elusive or imaginary. Reorganization must result in benefits to the distressed debtor. To accomplish this, the expense must bear a proper relation to the advantage gained. The action of some of the claimants in hastily organizing a committee composed of members residing in Minneapolis, Chicago, Buffalo, and New York, employing attorneys in Chicago, Buffalo, and Indianapolis, in traveling from the Pacific Coast to New York City, in telephoning and telegraphing to all parts of the United States, in employing expert typists, in advertising in the newspapers in the cities of Chicago and New York, in sending out warnings and appeals to join in the movement in opposition to the proposed plan of reorganization, promising security holders what, under the circumstances, was impossible of performance, should be discouraged. It has all the earmarks of a mad scramble for advantage at grossly exaggerated expenses, which the court is now asked to burden upon the debtor.

Fees and expenses are petitioned for totaling the tidy sum of $91,000. This amount is out of all proportion to the benefits to the debtor or the real value of the work done and the results accomplished. Counsel, committee members, and their employees seem to have lost their true sense of proportion. It therefore becomes the stern duty of the court to protect the debtor and its security holders.

■ Certainly, valuable legal services were rendered, and most certainly those who rendered these services are entitled to fair compensation. The value of these services should be measured by what lawyers would be justified under the circumstances in charging and collecting from a client for the legal work done, having due regard for the results accomplished, and the ability of the client to pay. More than this would be an outrage upon the debtor—less would be unfair to counsel.

■ However, it should be remembered that the legal services were to be rendered in the Northern District of Indiana, and the value of those services is to be measured by the customary fees paid in this jurisdiction. Counsel accepting employment are charged with knowledge of this rule. Where parties or committees procured the services of counsel residing in New York, Chicago, and Indianapolis, it was incumbent upon the parties or their counsel to provide for the rendition of the legal services in the jurisdiction of this court, and for that reason no transportation expenses will be allowed.

After the hearing at which testimony was adduced in reference to the services rendered and the value of those services, the affidavit of the treasurer of the company was filed, showing that the firm of Hays, Wolf, Kaufman & Schwabacher, counsel for the debtor, has been on retainer from this company since its organization. It seems that this company was organized in 1928 by an investment banking house of New York City, a client of this law firm. An operating company manufactured and sold gasoline pumps. This company was prospering and making money for its stockholders when, through the aforesaid investment banking house, all of the common stock of the operating company was purchased and a new company, a holding company, which is the company now being reorganized, formed to purchase and hold all the common stock of the operating company.

This was done, and bonds were sold against this common stock. Very large profits were made by someone in this promotion. It was a high finance promotion typical of the halcyon days of 1928 and 1929. It is not for this court to criticize, and the action taken in 1928 should be viewed as of that date and not as of the present writing.

However, the fact stands out that the counsel who are asking to be reimbursed liberally for reorganizing this company are the same counsel who acted for, and were paid by, the investment company in the original organization and set-up, and who have been on yearly retainer by the company in difficulty since its organization. The retainer fees paid were as follows:

| | |
|---|---|
| For part of the year 1928 | $2,500.00 |
| For 1929 | 6,000.00 |
| For 1930 | 4,000.00 |
| For 1931 | 4,000.00 |
| For 1932 | 3,000.00 |
| For 1933 | 3,000.00 |

And for 1934, while the reorganization was in progress and for which these fees are petitioned, the sum of $3,000.

■ Under the circumstances, this court does not feel like allowing the fees of $15,000 petitioned for by this firm. The court feels that $15,000 would be a fair fee to all the attorneys who acted for the company in this reorganization, and that amount is allowed, $5,000 being allowed to Hays, Wolf, Kaufman & Schwabacher, $5,000 to James R. Fleming, and $5,000 to Willard Shambaugh.

The court further feels that $11,000 is a fair fee for counsel for the committee, having due regard for the constructive service rendered by these counsel, the results obtained by their advice and labors, and the ability of the reorganized company to pay. That sum is therefore allowed as follows: $6,000 to the firm of Peabody, Westbrook, Watson & Stephenson, and $4,000 to the firm of Pickens, Gause, Gilliom & Pickens, and $1,000 to the firm of Moot, Sprague, Marcy, Carr & Gulick of Buffalo.

A total of fees and expenses will be allowed in the sum of $44,432.77. This seems like a rather large amount to burden upon the company which is just now struggling to make ends meet, but the allowances have been cut as far as the court feels justified in going.

The company will be ordered to pay all allowances herein made in cash except the fees allowed to counsel for the company in the sum of $15,000, and to counsel for the committee in the sum of $11,000. The company will be ordered to pay these fees as follows: One-half cash and one-fourth in six months, and the balance in one year from the date of the filing of this order, the deferred payments to be evidenced by notes bearing 5 per cent. interest.