In re MEMPHIS ST. RY. CO.

CENTRAL HANOVER BANK & TRUST CO. v. MEMPHIS ST. RY. CO.

Nos. 11792, 1205.

District Court, W. D. Tennessee.
July 24, 1935.

Larkin, Rathbone & Perry, of New York City, for themselves and Reorganization Committee, as petitioners for fees and allowances.

Armstrong, McCadden, Allen, Braden & Goodman, of Memphis, Tenn., for petitioner Walter P. Armstrong, of Memphis, Tenn., for receivers.

Waring, Walker & Cox, of Memphis, Tenn., for petitioner Roane Waring, of Memphis, Tenn., for debtor corporation.

Stickley, Exby, Moriarty & Pierce, of Memphis, Tenn., for receivers as petitioners for additional fee allowances.

MARTIN, District Judge.

The original bill in equity receivership case 1205 was filed on July 21, 1933, by the Central Hanover Bank, trustee, through Messrs. Armstrong, McCadden & Allen, of Memphis, and Larkin, Rathbone & Perry, of New York, as solicitors for the complainant. The bill was filed as a foreclosure proceeding under the consolidated mortgage on the property of the defendant, Memphis Street Railway Company. On the day that the bill was filed, July 21, 1933, the Memphis Street Railway Company, through Messrs. Waring, Walker & Cox, filed an answer, admitting the allegations of the bill, and on the same date an order was entered, appointing Messrs. E. W. Ford and J. H. Townsend receivers, and Hon. Walter P. Armstrong, attorney for the receivers.

On July 22, 1933, an order was entered, fixing the fees of Receiver E. W. Ford at $600 per month, and Receiver J. H. Townsend at $300 per month. This order was succinct, distinct, and clear-cut, and made no reservation whatever of the right to allow any additional compensation to the receivers. That no additional compensation was contemplated is evidenced by the fact that, on August 21, 1933, an order was entered that: "Walter P. Armstrong, as attorney, solicitor and counsel for said receivers, be, and he is hereby allowed the sum of $1,000.00 a month from and after July 21, 1933, on account of his services as such attorney, solicitor and counsel. All other matters, including the final compensation of said attorney, solicitor and counsel, are reserved."

On August 26, 1933, an intervening petition was filed by Messrs. Frederic J. Fuller, Earl G. Johnston, J. K. Newman, A. B. Ruddock, and Paul H. Saunders, through Messrs. Larkin, Rathbone & Perry, of New York, and Roane Waring, attorney, of Memphis, in which a plan of reorganization was presented by the petitioners, as a reorganization committee.

It appears fully from the record that in January, 1932, these same gentlemen had been constituted a bondholders' protective committee, and had, as such, devoted much time to the formulation of a plan of reorganization for the Memphis Street Railway Company, and in the course of their

684

work had retained as counsel for the said committee the firm of Larkin, Rathbone & Perry, of New York City.

On July 9, 1934, there was entered, nunc pro tunc, as of June 26, 1934, an order approving the fairness, timeliness, and equitableness of the reorganization plan. It has been shown that there were only minor deviations in the plan, as finally confirmed, from the original plan of the bondholders' protective committee.

On October 13, 1934, the Memphis Street Railway Company, through attorneys Waring, Walker & Cox, filed a debtor petition for the reorganization of the company under section 77B of the amendments to the National Bankruptcy Act (11 USCA § 207); and on the same date an order was entered approving the filing of the petition, and appointing Messrs. E. W. Ford and J. H. Townsend as temporary trustees. This order contains the following provision: "The compensation of the respective trustees shall be at the same rate as was fixed for their compensation as receivers by order of this court in the prior proceeding. The trustees are hereby authorized to retain and employ Walter P. Armstrong, as their solicitor, upon the same terms as fixed by the order of this court in the prior proceeding."

It was further provided that the court "reserved the full right and jurisdiction to make such orders for the payment of such reasonable administration expenses and allowances in the prior proceeding as may be fixed by the court in the prior proceeding."

On November 3, 1934, an order was entered, making permanent the appointment of said trustees.

On November 17, 1934, an order confirming the plan of reorganization was entered, in which it was provided: "That all amounts to be paid by the debtor, and all amounts to be paid to said Reorganization Committee for services or expenses incident to the reorganization are to be subject to the approval of this Court."

All of the aforesaid orders were entered and proceedings were had during the tenure of office of the predecessor judge of this court, the distinguished and late lamented, Honorable Harry B. Anderson.

It now becomes the duty of the successor judge of this court to pass upon the several petitions for allowances and expenses in the equity receivership cause, and also in the debtor proceeding under section 77B. A complete hearing has been held on these petitions. Much testimony has been adduced, and arguments have been made.

It is not a pleasant duty for a judge to pass upon the value of services of eminent and able counsel, whose skill is well known to him, but it is his duty to do so when petitions of the character now before the court are presented for consideration and action.

At the outset, let it be said that this court, as has been frequently heretofore pronounced, is firmly of the opinion that it is essential to a proper administration of insolvency and bankruptcy proceedings, in the disastrous era in which our country has been placed, to hold down the expenses of reorganization to as low a basis as is consistent with fairness to parties who have rendered services to creditors in such proceedings or to the debtor.

In the recent case of Realty Associates Securities Corporation v. O'Connor, decided in the spring of this year and reported in 295 U. S. 295, 55 S. Ct. 663, 665, 79 L. Ed. 1446, the Supreme Court of the United States, speaking unanimously through Mr. Justice Cardozo has said: "Extravagant costs of administration in the winding up of estates in bankruptcy have been denounced as crying evils. Strengthening Procedure in the Bankruptcy System, Sen. Doc. No. 65, 72d Congress, 1st Sess. (1932), p. 53; also H. R. Rep. 65, 55th Congress, 2d Sess. (1898), p. 44. In response to those complaints, Congress has attempted in the enactment of the present statute to fix a limit for expenses growing out of the services of referees and receivers." Citing sections of the Bankruptcy Act.

Thus the highest court in the land has declared this policy in favor of the economical administration of matters in bankruptcy and receiverships.

In Re Insull Utility Investments, Inc. (D. C. Ill. 1933) 6 F. Supp. 653, 661, Evans, Circuit Judge, said: "And finally, in determining compensation, it must be kept in mind that 1933 is not 1929. The wages and salaries of all kinds were much lower in 1932 than in the twenties. The difference must be reflected in the compensation of receivers and their counsel, as it is in other fields."

In a recent District Court decision, In re Wayne Pump Co. (D. C. Ind. 1935) 9 F. Supp. 940, 942, the court said:

"It might be well to remind all claimants that this procedure is under an act of Congress designated 'An act for the relief of debtors.' If relief is to be extended, it must be real and not illusive or imaginary. Reorganization must result in benefits to the distressed debtor. To accomplish this, the expense must bear a proper relation to the advantage gained. The action of some of the claimants in hastily organizing a committee composed of members residing in Minneapolis, Chicago, Buffalo, and New York, employing attorneys in Chicago, Buffalo, and Indianapolis, in traveling from the Pacific Coast to New York City, in telephoning and telegraphing to all parts of the United States, in employing expert typists, in advertising in the newspapers in the cities of Chicago and New York, in sending out warnings and appeals to join in the movement in opposition to the proposed plan of reorganization, promising security holders what, under the circumstances, was impossible of performance, should be discouraged. It has all the earmarks of a mad scramble for advantage at grossly exaggerated expenses, which the court is now asked to burden upon the debtor.

"Fees and expenses are petitioned for totaling the tidy sum of $91,000. This amount is out of all proportion to the benefits to the debtor or the real value of the work done and the results accomplished. Counsel, committee members, and their employees seem to have lost their true sense of proportion. It therefore becomes the stern duty of the court to protect the debtor and its security holders."

The court held that where counsel of a debtor corporation, since organization, received annual retainers from $2,500 to $6,000, they were entitled to $5,000 for services rendered in reorganization of the corporation under section 77B. The court said further: "It is a serious question how far a volunteer committee is justified in making charges for services and expenses, but this at least may be positively stated, that the true basis of all allowances is the value of the service rendered."

■ The receivers, and the attorneys for the receivers, are, of course, entitled to fee allowances to be determined by the court, because these gentlemen are acting as arms of the court. The debtor corporation is also entitled to the benefit of counsel in its own interest. It is, therefore, proper for the court to allow a fee to the debtor's attorney.

Any other fee allowances are not required by the statute, section 77B, and are not, in equity, to be allowed by the court out of the funds of the debtor corporation, being administered in insolvency proceedings, or in bankruptcy, unless the services for which fee allowances are claimed were authorized by the court before they were rendered, or are found by the court to have been rendered by the claimants acting in an entirely disinterested manner for the benefit of the estate as an entirety. The only justification for such allowances, in the discretion of the court, is found in section 77B of the amendments to the National Bankruptcy Act (11 USCA § 207): "(c) Upon approving the petition or answer or at any time thereafter, the judge, in addition to the jurisdiction and powers elsewhere in this section conferred upon him * * * (9) may allow a reasonable compensation for the services rendered and reimbursement for the actual and necessary expenses incurred in connection with the proceeding and the plan by officers, parties in interest, depositaries, reorganization managers and committees or other representatives of creditors or stockholders, and the attorneys or agents of any of the foregoing and of the debtor, but appeals from orders fixing such allowances may be taken to the Circuit Court of Appeals independently of other appeals, in the proceeding and shall be heard summarily."

In the light of these principles, and the policy of this court by its orders and decrees to enforce the economical administration of estates in receiverships and in bankruptcy, the court will now proceed to examine the various petitions which are before the court for action.

■ The reorganization committee, Messrs. Frederic J. Fuller, Earl G. Johnston, J. K. Newman, A. B. Ruddock, and Paul H. Saunders, ask an allowance of $10,000 to themselves for services. They further ask an allowance of $11,275.90 as expenses paid by the reorganization committee to May 28, 1935, together with an added item of interest of $1,078.63. They further petition for the approval of allowances listed as approved and assumed but not actually paid. These last-named expenses are in excess of $33,000. They further ask for allowances to several banks and trust

companies for services as special depositaries.

As has been heretofore pointed out, this reorganization committee was originally a bondholders' protective committee, which commenced its functions early in 1932, more than a year preceding the filing of any court proceeding.

It appears that the committee agreed that the value of the services of Messrs. Larkin, Rathbone & Perry, as counsel, amounted to $25,000 for services rendered prior to the filing of the equity bill on July 21, 1933, for foreclosure under the consolidated mortgage; and that many other expenses were also incurred prior to the filing of the foreclosure bill, for which allowance is now claimed.

It seems obvious to this court that such expenses are not allowable out of this estate in bankruptcy under section 77B. The establishment of the principle in United States courts that such expenses are allowable, carried to its logical conclusion, would be subversive of the idea and purpose underlying the enactment of the amendments to the National Bankruptcy Act. To let gentlemen proceed on the idea and theory that they can employ counsel, advertise, expend money freely, or economically, as the case may be, and then come into court and burden upon the debtor expenses incurred prior to any court proceeding, is not contemplated by the act. Therefore, the allowance of any such claim is not even considerable in this court.

The reorganization committee also approves and asks the payment, by court allowance in this case, of the sum of $22,500 to Messrs. Larkin, Rathbone & Perry, as counsel for the reorganization committee, in addition to the aforesaid allowance of $25,000 to said firm of attorneys. The reorganization committee also asks the allowance of expenses listed in its petition.

Messrs. Larkin, Rathbone & Perry, by the undisputed record, were attorneys for the Central Hanover Bank & Trust Company, and for the bondholders secured under the consolidated mortgage, in which said bank was trustee. Services rendered by them toward a complete consummation of the plan which the bondholders advanced through the reorganization committee (which had formerly been the bondholders' protective committee) must be deemed to have been services rendered to the bondholders. This firm would have been unfaithful to its trust as attorneys, unless throughout the entire proceedings it had properly represented the interest of the bondholders. It would have been an obviously conflicting position for them to undertake to represent any one else who would have a conflicting interest with the bondholders. Therefore, the court assumes that they performed their professional duties and represented their clients throughout this entire proceeding, both in court and out of court, and they must accordingly look to their clients for compensation, and not to the funds of the debtor corporation, now under the protection of this court in bankruptcy.

The reorganization committee, as has been stated, was also originally the chosen representative group of the bondholders, and each of the members of that committee, it has been shown, was either personally interested as a bondholder or was representing the interest of large bondholders. Therefore, they were giving their time and attention to the cause of these bondholders in all steps taken both before and after the original bill was filed. Messrs. Fuller, Johnston, and Ruddock were really representatives of Mr. Billings, or his estate; the Billings holdings constituting a very heavy percentage of the total bonds outstanding. Dr. Saunders and Mr. Newman were representing the group of southern bondholders, largely centered in New Orleans. From the inception of this matter, the reorganization committee and its counsel were in the position of being the special representatives of the bondholders. They must look to their clients, or those whom they represented, for their compensation. It follows, therefore, that the petition of the reorganization committee for the allowances claimed, and the fee claimed for its attorneys, Messrs. Larkin, Rathbone & Perry, is denied.

Certain of the expenses listed in the petition of the reorganization committee, excluding any fee allowances, may be properly chargeable to the estate of the debtor; but these petitions do not separate or segregate the items of expense in such manner that this court can determine which items of expense were of benefit to the creditors and to the debtor corporation generally, and which were expenses of the protective committee, or expenses of the protective committee continuing as a reorganization committee, and acting entirely in the interest of the bondholders. A reference will be made to the standing master for proof of any of such claims as, under the

opinion of this court and the decision now being rendered, are properly allowable out of the funds in the hands of the trustees.

The court must not be construed by anything that has been said as intending remotely to reflect upon the good work performed by the reorganization committee, or its highly regarded counsel in working to the consummation of a plan which has been approved by the predecessor judge of this court. The court knows from the record that these gentlemen are experts in their lines; that they have put in much time, thought, and effort to the work, finally resulting in the consummation of a plan of reorganization for the Memphis Street Railway Company, debtor. But the court is simply holding, without passing (because it is unnecessary to do so) on the reasonableness or unreasonableness of any fee allowances, or other allowances claimed as expenses in this case, that the reorganization committee and its attorneys must look to the bondholders for payment.

█ The receivers in the equity cause, who are also trustees in the corporate reorganization proceeding under section 77B, Messrs. E. W. Ford and J. H. Townsend, have filed claims for the allowance to each of $5,000 additional compensation.

The claims of the receivers and trustees for additional compensation are denied, for the reason that the court orders, heretofore discussed, expressly provided and fixed the basis of compensation at $600 and $300 to the respective receivers and trustees; and for the further reason that the court is of the opinion that the total allowance originally fixed by the court, $600 and $300 a month, is a reasonable and fair allowance, and adequately compensates the gentlemen for their services.

The salary of Mr. Ford was $8,000 per annum prior to the receivership proceeding; his salary as trustee at $600 per month would be $7,200 per annum, a reduction of only 10 per cent. from his previous salary with a going concern as operating superintendent. Mr. Townsend's services at $300 per month, added to the allowance of $600 per month to Mr. Ford, make the total salaries paid trustees and receivers considerably in excess of the salary which Mr. Ford would have received had the corporation continued operating as a going concern.

Such considerations seem material. No matter how able the official, when the company in which he has been an officer for many, many years reaches the point, whether due to unavoidable causes or not, where it is necessary to have the protection of the courts for the preservation of its assets and to keep it operating, he might be considered lucky, in these days and times, if he is appointed receiver and continues the general work which he has been doing, with some added duties. The court held Mr. Ford in an undisturbed position, as receiver and trustee, and he now continues as an official of the reorganized company. It is not asking any great sacrifice of Mr. Ford that he receive slightly less compensation, only 10 per cent., as receiver than he would have received had his company continued as a going concern.

In composition debtor reorganization proceedings, there must be sacrifice of self-interest to some extent, if successful plans are to be worked out. The creditors generally must make sacrifices, and the debtor cannot expect to obtain all that he desires. It is highly important, also, that the courts insist upon an economical administration to achieve successful reorganization of debtor corporations brought within their jurisdiction under section 77B.

Before passing to a consideration of the claims which have not yet been discussed, the court deems it proper to observe that there has already been paid to the receivers and the attorneys for the receivers the sum of $41,800. Had the claims as filed in this cause been allowed, the total expense of the receivership and ensuing reorganization under section 77B, including the attorneys', receivers', committees' and other expenses would have amounted to approximately $175,000. This sum is entirely too high an expense for a receivership in which, after all, as Dr. Saunders has testified, the bondholders are merely trying to pull themselves up by their boot straps and to put their collateral in better shape. The Memphis Power & Light Company, owner of all the common and preferred stock, has been satisfied to take stock in cancellation of the entire indebtedness to it of the Memphis Street Railway Company in an amount in excess of $2,650,000. It would be too heavy a burden to place upon the Memphis Street Railway Company, a utility serving the public, holding its franchise from the public, and receiving its revenue from the public, the total expenses claimed. The allowance of the claims which have been denied might seriously impair the benefit and relief which this

proceeding has sought to obtain for the debtor, Memphis Street Railway Company, in corporate reorganization.

Now, of course, in referring to approximately $175,000 of expenses, it must be noted that a portion of such expenses would have fallen upon the Street Railway Company had the company not been forced into receivership and subsequent bankruptcy.

The fees of the able counsel for the Memphis Street Railway Company, Mr. Armstrong, and the salary of the competent general superintendent, Mr. Ford, would have been payable had the company continued as a going concern. But, even considering those items as obligations, the actual cost of this proceeding would have been in the neighborhood of $140,000.

A clear-cut and comprehensive petition has been filed by the attorney for the receivers and trustees, in which the court is asked to allow an additional fee of $10,000.

█ Before this hearing, the court took pains to study the complete record in the case, because he was not judge of the court during the time that the proceedings had been had, either in the equity cause or in the bankruptcy proceeding under section 77B. The court desired to be fully informed as to all the proceedings and examined all the documents; and had, therefore, a comprehensive view of this case before the hearing. From inspection of the record, it is manifest that Hon. Walter P. Armstrong has done a very excellent piece of work. The receivership and ensuing proceeding in bankruptcy have been handled in shipshape.

It appears that, in the original court order allowing his compensation of a thousand dollars per month, there is a reservation for additional compensation, allowable in the discretion of the court.

Mr. Armstrong has drawn as compensation the sum of $22,000. He is somewhat in the position of Mr. Ford, in that the continuity of his representation of the company as its attorney has been carried on throughout the proceeding. He has performed a heavy amount of work, and his work has been well and ably done. But, during these days and times, a fixed and certain salary of a thousand dollars per month from one client is substantial compensation, even considering the fact that lawyers' fees are not net earnings, but

are to be considered in the light of overhead expense. This court knows that, unhappily, the earnings of lawyers have been greatly reduced, as have been the earnings of business men, professional men, laboring men, and men generally. But, as stated in the opinion cited, supra, 1933 is not 1929; nor, it may be added, is 1935.

It is extremely difficult to calculate the value of professional services extending over a long period of time, covering as wide a field of work as is embraced in this case; but the court is not committed in duty to follow opinion testimony entirely in fixing fees, even though the highest respect be entertained for the lawyers who have given their opinions in support of the fee allowances claimed. The court's function is to adjudge these fees, and it is the court's duty to protect the estate under its care.

Considering to the best of the ability and conscience of the court the claim of the able attorney for the receiver for an additional allowance, and viewing it from the double standpoint of conserving the assets of the estate and allowing a fair compensation to counsel for services worthily rendered, the court is of the opinion that an added compensation of approximately 30 per cent., to that which has been already awarded and drawn, would be fair and reasonable. Therefore, the court will allow the Hon. Walter P. Armstrong, as attorney for the receivers and trustees, an additional compensation of $6,500.

█ There remains for consideration the petition of Colonel Roane Waring, of Waring, Walker & Cox, for counsel fees as attorneys for the debtor corporation. As has been heretofore stated, it is proper that such fee be paid out of the estate of the Memphis Street Railway Company, debtor in bankruptcy. The firm of Waring, Walker & Cox has been long connected with the Memphis Street Railway Company. Colonel Roane Waring became one of its attorneys shortly after he was graduated from the University of Virginia. He has been thoroughly familiar with the Memphis Street Railway Company's business, and was in a peculiar position to render valuable services to the company. He, like Mr. Armstrong, also had the benefit of the assistance of able partners and associates in the work of this receivership.

Upon the showing from the record in this cause, neither Colonel Waring, nor any member of his firm, has received any

compensation whatever from the Memphis Street Railway Company, since the filing of the equity receivership bill. Their services were highly important and valuable, as has been abundantly shown. The court will, therefore, allow a fee of $6,000 to Messrs. Waring, Walker & Cox, as attorneys for the debtor corporation.

Appropriate orders will be drawn and entered in conformity with this opinion.