**In re NATIONAL ACCESSORIES, Inc.**
No. 5248.

District Court, D. Nebraska, Omaha Division.
Jan. 8, 1936.

Monsky, Grodinsky, Marer & Cohen, of Omaha, Neb., for objector Omaha Nat. Bank.

Fred S. White, of Omaha, Neb., for receiver and trustee.

Fradenburg, Webb, Beber, Klutznick & Kelly, of Omaha, Neb., for debtor.

Oscar T. Doerr, of Omaha, Neb., for petitioning creditors.

DONOHOE, District Judge.

This proceeding was commenced by the filing of an involuntary petition in behalf of creditors claiming to have provable claims in excess of $500. Three certain creditors were represented by the claimant Oscar T. Doerr as their attorney. On the same date, there was filed a voluntary appearance and waiver of summons by the debtor, represented by the firm of Fradenburg, Webb, Beber, Klutznick & Kelly as its attorneys. Petition for appointment of receiver was filed, and thereafter Mr. Joseph C. Pepper was appointed temporary receiver, and continued in the operation of the business as such receiver until December 17, 1934. On December 14, 1934, the debtor, by its attorneys above named, filed an answer under section 77B of the Bankruptcy Act (11 U.S.C.A. § 207), and Joseph C. Pepper was thereupon appointed temporary trustee, and thereafter continued to act as temporary or permanent trustee until the 16th day of March, 1935, when the merchandise was sold in bulk under order of the court. On the 10th day of January, 1935, the debtor by its attorneys above named filed a proposed plan of reorganization, by the provisions of which the debtor organized a new corporation for the purpose of purchasing the printing supplies, fixtures, and equipment for a consideration of $1,000 in cash, and the assumption of three certain secured obligations aggregating the sum of $635.09.

After the disposition of all of the assets, there now remains available for the payment of expenses and dividends the sum of $14,970.69, and we have now for consideration the claims of the receiver, trustee, and attorneys, to wit:

| | |
|---|---|
| Oscar T. Doerr, attorney fees— $750.00, voluntarily reduced in supplemental claim to | $ 250.00 |
| and costs aggregating | 40.00 |
| Claim of Robert J. Webb, in behalf of the law firm of Fradenburg, Webb, Beber, Klutznick & Kelly, totaling the sum of | 750.00 |
| Claim of Joseph C. Pepper, compensation as temporary receiver | 534.00 |
| Claim of Joseph C. Pepper, compensation as temporary and permanent trustee | 1,400.00 |
| Claim of Fred S. White, as attorney for receiver | 400.00 |
| Claim of Fred S. White, as attorney for the temporary and permanent trustee, for services rendered to date | 1,500.00 |
| All aggregating the sum of | $4,874.00 |

The Omaha National Bank, one of the principal creditors, objects to the allowance of the claims of Oscar T. Doerr, Fradenburg, Webb, Beber, Klutznick & Kelly, Joseph C. Pepper, receiver, and Joseph C. Pepper, temporary and permanent trustee, as excessive and exorbitant, and the creditor Eggers-O'Flyng Company of Omaha has objected to the allowance of each and all of the claims for the same reason.

The consideration and allowance of fees to court officers is always troublesome to the court, and that is particularly true in bankruptcy litigation. The provisions of the act of Congress providing for compensation for trustees, receivers, and marshals (title 11 U.S.C.A. § 76), limits by percentage the maximum amount which courts may allow for such compensation, and the allowance of attorneys' fees are provided for by section 64b of the Bank-

ruptcy Act (11 U.S.C.A. § 104 (b), the amount thereof being within the sound discretion of the court. Heretofore there seems to have been a general impression abroad among the profession that receivers, trustees, etc., were entitled to the maximum amount allowed under the act, and that attorneys acting for them were entitled to at least a like sum, if not more, and as a consequence allowances in bankruptcy proceedings in many instances were beyond charges made for like services to private individuals.

Recognizing this situation, the Supreme Court of the United States, as early as the year 1928, speaking through Chief Justice Taft, said: "We were desirous of making it clear by our action that the judges of the courts, in fixing allowances for services to court officers, should be most careful, and that vicarious generosity in such a matter could receive no countenance." In re Gilbert, 276 U.S. 294, 48 S.Ct. 309, 310, 72 L.Ed. 580.

The practice, however, continued in certain quarters, until finally the Supreme Court, in April of the present year, speaking unanimously through Mr. Justice Cardozo, denounced the extravagant costs of administration in the winding up of estates in bankruptcy as "crying evils," and at the same time pointed out that Congress, recognizing those complaints, intended the enactment of the present statutes "to fix a limit for expenses growing out of the services of referees and receivers." I quote the following from the opinion: "In cases of composition the principle is 'the amount to be paid to creditors upon the confirmation,' and before we can compute what is due we must know what payment is. The ascertainment of that fact, like the ascertainment of facts generally in the discharge of judicial function, is a process that must be flexible and broad enough to keep all the circumstances in view. In weighing their significance a court will not forget that Congress meant to hit the evil of extravagance, and that the meaning of its words, if doubtful, must be adapted to its aim." Realty Associates Securities Corporation v. O'Connor, 295 U.S. 295, 55 S.Ct. 663, 665, 79 L.Ed. 1446.

Later, by section 76a, title 11 U.S.C.A., Congress specifically provided: "The compensation allowed a receiver or trustee or an attorney for a receiver or trustee shall in no case be excessive or ex-orbitant, and the court in fixing such compensation shall have in mind the conservation and preservation of the estate of the bankrupt and the interests of the creditors therein."

In the case of In re Wayne Pump Company (D.C.) 9 F.Supp. 940, 942, the court suggests that all claimants be reminded that the procedure under the act of Congress is designated "An act for the relief of debtors" and inferentially not an act for the relief of attorneys and court officers.

In the recent case of In re National Department Stores (D.C.) 11 F.Supp. 633, 637, the court, after noting this warning of the Supreme Court against vicarious generosity, states: "Formerly, the idea prevailed that attorneys were entitled to greater compensation when employed in a receivership or bankruptcy case than when serving private interests. In reality, receivers and attorneys are officers of the court. As public servants, their compensation should never be as large as the compensation of those engaged in private employment. By such considerations, debtors may be relieved and creditors and stockholders served."

And in the case of In re Memphis Street Ry. Co. (D.C.) 11 F.Supp. 682, 685, the court, speaking through District Judge Martin, aptly states the proposition as follows: "If relief is to be extended, it must be real and not illusive or imaginary. Reorganization must result in benefits to the distressed debtor. To accomplish this, the expense must bear a proper relation to the advantage gained."

On the question of allowance to an attorney for petitioning creditors, it has been held that such allowance must be confined to services actually rendered in filing the petition and prosecuting it to the adjudication of the bankrupt. In re Munford (D.C.) 255 F. 108; In re Consolidated Distributors (C.C.) 298 F. 859.

And, where such attorney renders services in the matter of the appointment of a receiver, he is entitled to allowances for services in procuring such appointment. Morse & Tyson v. Irving-Pitt Mfg. Co. (C.C.A.8) 18 F.(2d) 692.

And it has been held also that no compensation is allowable to attorneys for petitioning creditors for services to reorganization committees, supplying information to creditors, and in conferring with

other counsel. Calhoun **v.** Stratton (C.C.A.) 61 F.(2d) 302.

The allowance to attorneys for receivers and trustees depends largely upon the following circumstances, namely: The time employed; the difficulty of the legal question involved; the results achieved; the amount at stake; and the size of the estate. In re Burrus (D.C.) 97 F. 926; In re Rude (D.C.) 101 F. 805; In re Tietje (D.C.) 263 F. 917; In re Hoffman (D.C.) 173 F. 234; In re Osofsky (D.C.) 50 F.(2d) 925.

The allowance to an attorney for the bankrupt is limited to compensation for services rendered to the bankrupt while performing the duties put upon him by the act, and does not include services rendered prior to the institution of bankruptcy proceedings. In re Luber (D.C.) 261 F. 221; In re Munford (D.C.) 255 F. 108; In re Taylor (D.C.) 280 F. 127.

By General Order 44, as amended in 1933 (11 U.S.C.A. following section 53), attorneys for receivers and trustees must obtain their appointment from the court upon petition, duly verified, setting forth the occasion and necessity for such appointment. Then too, the Supreme Court in its promulgation of General Order 42, as amended in 1933 (11 U.S.C.A. following section 53), makes it the duty of every attorney for receivers and trustees, seeking an allowance, to file with the court a petition under oath, "setting forth a full and detailed statement of such services and expenses and the amount claimed therefor." This general order no doubt was promulgated by the Supreme Court in an effort to remove the "crying evil" which they later referred to in their opinion and to enable the court to arrive at a proper allowance and at the same time bring sharply to the court's attention the various items for which such attorneys seek allowances.

In construing this general order, we hold that attorneys seeking allowance should itemize in detail their statements, setting forth:

1. Consultations:
   a. Persons conferred with.
   b. Subject of conference.
   c. Time necessarily spent.
   d. Benefits or advantages obtained for trust.
   e. Charge for service.

2. Legal papers:
   a. Document prepared.
   b. Time required.
   c. Charge for service.
3. Appearances in court:
   a. Matter involved.
   b. Resistance encountered.
   c. Time necessarily required.
   d. Result obtained.
   e. Charge for service.
4. Briefing:
   a. Law questions under consideration.
   b. Manner in which trust was interested or concerned.
   c. Time necessarily required.
   d. Benefit derived by trust estate.
   e. Charge for the service.
5. Miscellaneous services:
   a. Nature of service.
   b. Time required.
   c. Benefits inuring to the trust estate.
   d. Charge for services.

Appointees of the court, whether receiver, trustee, or attorney, must expect their claims to be closely scrutinized by the debtor, the creditors, and by the court, and they should be meticulous in keeping accurate accounts of the various items and elements which go to making up their claim. It will not do to state in a general way services performed, and then ask a bulk allowance.

Coming to the matter at hand, we, by a special memorandum, called upon counsel to file supplemental claims in accordance with this General Order 42. Supplemental claims were filed, but still compliance has not been had. In these various claims we find many items, of which the following are samples: "Your petitioner investigated the affairs of the bankrupt, conferred with the attorney for the bankrupt, reported the status of debtor's affairs to petitioning creditors." "Conferred with the attorney for the receiver, and made inquiry from other sources regarding the qualifications of the acting receiver." "Your petitioner performed various and sundry services of great value to the estate." "That numerous conferences were held with creditors and their attorney in an effort to devise some satisfactory solution of the difficulties." "Conferences relating to this subject matter were also had, and the conferences so attended by the attorneys, who are the applicants herein, consumed a considerable amount of time." "That upon

the filing of said petition a considerable amount of time was spent with the management of the alleged bankrupt, making a study of its financial position." "These conferences extended over a number of weeks, and the attendance thereat by the attorneys for the alleged bankrupt consumed a large amount of their time." "Numerous controversies arose between the trustee and the creditors, and as a result valuable services were rendered by the attorney for the debtor." "In connection with the duties of the applicant, it was necessary to attend numerous hearings for the purpose of settling disputed accounts, taking evidence thereon, and for the purpose of examining the books of the debtor." "Many claims were adjusted and compromised after a review of the records of the debtor corporation." "In several lawsuits * * * suggestions of bankruptcy were filed." The claims contain many such items, but the foregoing will suffice for our purpose. In none of these claims are there items of charge for the particular service rendered, but a general bulk sum is petitioned for. It will be readily seen that such statements cannot serve any useful purpose, or be the basis for any specific allowance. It may be that the claimants have not kept their books in such form as to enable them to render statements in accordance with our construction of this general order, and, since such exactitude has not been required heretofore, we will proceed to make such allowances as we deem just and reasonable in the light of the information we have at hand.

### Claim of Oscar T. Doerr.

Mr. Doerr's claim is based, first, upon conferences held with petitioning creditors; second, the preparation and filing of an involuntary petition; third, the application for appointment of a receiver; and, fourth, moneys advanced by way of costs.

Conferring with petitioning creditors and conferring with other counsel is not a basis for an allowance. Calhoun v. Stratton, supra. An allowance for filing an involuntary petition may be allowed when it is prosecuted to an adjudication of the bankrupt. In re Munford, supra.

We have left the services rendered in securing the appointment of a receiver and costs advanced. One of the other claimants sets forth in his claim that he prepared the application for and order appointing the receiver. While the other claimant is not entitled to any compensation for such services, we feel that an allowance should be made to this claimant therefor, and we are of the opinion that, under the showing, $100 is a fair and reasonable allowance for that service; that, in addition thereto, he is entitled to a return of the costs advanced by him amounting to the sum of $40. The claim will therefore be allowed in the sum of $140.

### Claim of Robert J. Webb on Behalf of the Firm of Fradenburg, Webb, Beber, Klutznick & Kelly.

The substantial basis for this claim is the preparation of the answer and the preparation and submission of the plan of reorganization under 77B. An examination of the answer and plan discloses that both are somewhat simple. The plan, as submitted, is neither voluminous nor complicated. We have in mind, however, that, at the time this proceeding was commenced, it was thought that the debtor had assets fairly worth over and above its liabilities somewhere in the neighborhood of $70,000 to $75,000. We are also mindful of the fact that 77B was then of quite recent enactment, and without doubt considerable time was spent studying the act and conferring with interested parties in the formulation of a plan, but without something more definite than we have set forth in the application we are unable to determine the extent or importance thereof. However, due to the great shrinkage in the assets and the relatively small amount now for distribution to the creditors, we feel that an allowance of $400 is ample to cover this claim, and this claim is therefore allowed in that sum.

### Claims of Joseph C. Pepper as Receiver and Temporary and Permanent Trustee.

From an examination of these claims, it appears that the receiver conducted the business from November 3, 1934, to December 17, 1934, or a period of one month and fourteen days. Any benefits inuring to the trust centers in the value, if any, in keeping the business running as a going concern. He devoted his entire time to the business during that period. On December 17, 1934, he was appointed temporary trustee, and continued thereafter either as temporary or permanent trustee in the operation of the business until March 16,

1935, or a period of practically three months. From December 17, 1934, to January 1, 1935, he devoted all of his time. From January 1 to March 16, 1935, he devoted one-half of his time. The assets were sold in bulk, so that no value was obtained for the trust by reason of the fact that the business was kept running as a going concern, and little, if any, profit was derived from the operation. Taking all of these facts into consideration, we are of the opinion that an allowance of $300 for services as temporary receiver, and $600 for services as temporary and permanent trustee is sufficient and ample to cover the service. While the amount is well under the maximum percentage permitted by the statute, yet it is equal to a salary of something better than $300 a month for the time actually spent. The claims therefore will be allowed in these amounts.

*Claims of Fred S. White, Attorney for Receiver and Attorney for Temporary and Permanent Trustee.*

First, with reference to the claim for compensation as attorney for the receiver, no allowance can be made for services rendered until a petition has been filed and an order entered making the appointment (General Order No. 44, as amended in 1933 [11 U.S.C.A. following section 53]). The official files disclose the pleadings and papers prepared and filed. Aside from this, the concrete facts presented to us are quite meager, but we think, in view of the definite information that is presented, that an allowance of $150 for the services rendered as the attorney for the receiver is ample. What we have said concerning the claim for compensation as attorney for the receiver largely applies to the application for compensation as attorney for the temporary and permanent trustee. In addition to this, we have in mind that, while these proceedings were pending, reorganization proceedings were relatively new; that there was little, if any, precedent to aid counsel in conducting the proceedings, and we are impressed with the careful and thorough manner in which the pleadings, orders, and papers have all been prepared, and, in view of all of these considerations, we feel that an allowance as compensation for the attorney for temporary and permanent trustee in the sum of $750 is reasonable and justified, and it is so ordered.