In the Matter of NOR–LES SALES,
INC., a Michigan corporation,
Debtor.

Bankruptcy No. 81–05549–B.

United States Bankruptcy Court,
E.D. Michigan, S.D.

Sept. 12, 1983.

Stark & Reagan, P.C., Troy, Mich. by Thomas H. Finnerty, Detroit, Mich., for trustee.

## OPINION

GEORGE BRODY, Bankruptcy Judge.

On September 25, 1981, Nor-Les Sales, Inc., filed a petition under chapter 11 of the Bankruptcy Code. Neal R. Sutherland was appointed trustee on October 5, 1981 by agreement between a secured creditor, Security Pacific Credit Corporation, and the debtor. The trustee retained the law firm of Stark & Reagan to represent him. A creditors' committee was appointed on October 20, 1981, and an order authorizing the committee to retain the law firm of Hertzberg, Jacob & Weingarten was entered on the same day. The creditors' committee moved to convert the chapter 11 to a chapter 7 and on November 20, 1981, an order of conversion was entered. Mr. Sutherland was appointed as interim trustee, and he retained the law firm of Stark & Reagan, the same firm that he retained when acting as trustee in the chapter 11 case, to represent him in the chapter 7 proceeding.

Mr. Thomas Finnerty, of the firm of Stark & Reagan, filed an application for compensation in the amount of $4,750 for services rendered in the chapter 11 proceeding and an application for compensation in the amount of $1,875 for services rendered in the chapter 7 proceeding. The time sheets submitted by counsel indicate that he expended 47½ hours of time in the chapter 11 proceeding and 18¾ hours of time in the chapter 7 proceeding. Actually, the time listed for the services rendered during the chapter 11 should be increased by 3 hours for time charged for attending a hearing on the creditors' committee's motion to convert and for a meeting with the trustee to review projections relative to the continued operation of the business if the case were converted. These services were performed prior to the entry of the order of conversion and prior to retention of counsel by the interim trustee. These services, if they are at all compensable, are chargeable as expenses incurred during the chapter 11 phase of the case. The applications also indicate a charge of $100 an hour for the services rendered. The fee request is a product of the hours expended multiplied by the hourly charge.

A hearing was held on December 9, 1982, and the court entered an order allowing compensation but in a reduced amount. The court did not make any specific findings of fact to justify the reduction of the fee request. Counsel appealed, and the case was remanded to the bankruptcy court to make required findings of fact.

Initially, counsel contends that since no objections were raised to the fee request,

the court must award the fee as requested. This argument has no merit. The burden of establishing the reasonableness of a fee rests upon the party making the request. The court has a duty, regardless of whether objections are filed, to determine if the compensation requested is or is not reasonable. *York International Building, Inc. v. Chaney (In re York International Building, Inc.),* 527 F.2d 1061 (9th Cir.1975); *see also, In re Detroit International Bridge,* 111 F.2d 235 (6th Cir.1940); *In re Interstate Stores, Inc.,* 437 F.Supp. 14 (S.D.N.Y.1977); *In re Dole Co.,* 244 F.Supp. 751 (D.Me.1965); *In re Kentucky Electric Power Corp.,* 11 F.Supp. 528 (W.D.Ky.1935); *In re Piedmont Development & Investment Corp.,* 3 Bankr. Ct.Dec. (CRR) 97 (Bankr.N.D.Ga.1976); *In re Urban American Development Co.,* 2 Bankr.Ct.Dec. (CRR) 474 (Bankr.S.D.Iowa 1976). Such holdings reflect the clear mandate of section 330 of the Bankruptcy Code and its predecessors, section 62 of the Bankruptcy Act and Rule 219 of the Rules of Bankruptcy Procedure—a mandate grounded in reality. Seldom are objections lodged to fee requests. *In re Kentucky Electric Power Corp.* The failure of parties in interest to oppose fee requests is not surprising. The reasons for this lack of opposition are spelled out in *In re Hamilton Hardware Co.,* 11 B.R. 326 (Bkrtcy.E.D.Mich.) aff'd 8 Bankr.Ct.Dec. (CRR) 667 (E.D.Mich.1981). In part, the court in *Hamilton Hardware* observed that:

> The Bankruptcy Bar is a relatively closed society. The same attorneys generally appear in varying capacities in almost all substantial chapter 11 cases. Such continuing association fosters a club atmosphere which militates against effective client representation in matters relating to compensation. The court, thus, is faced with the difficult and delicate task of fixing fair and just compensation without the input of those who are in the best position to evaluate the fee request.

11 B.R. at 330 n. 1. Thus, the ultimate responsibility to assure that fees do not exceed the bounds of reasonableness rests, as it must, with the court.

■ An attorney is entitled to reasonable compensation based on the time, nature, extent and value of the services rendered. 11 U.S.C. § 330. The amount to be allowed is left to the sound discretion of the court. *In re Urban American Development Co.* This discretion, however, must be reasonably exercised. The compensation awarded should be adequate to provide an incentive for competent and able lawyers to participate in bankruptcy proceedings and to insure efficient case administration. However, courts are not at liberty to indulge in the luxury of "vicarious generosity" by awarding more than a fair and reasonable fee. *In re Owl Drug Co.,* 16 F.Supp. 139, 142 (D.Nev.1936), aff'd sub nom. *Cohn v. Edler,* 90 F.2d 823 (9th Cir.1937); *In re York International Building, Inc.*

Each of the fee requests of counsel will be considered separately in light of these principles.

The court will first consider counsel's application for compensation for representing the chapter 11 trustee. The basic factors courts have considered in evaluating a fee application are: "the time spent, the intricacy of the questions involved, the size of the estate, the opposition encountered, [and] the results obtained." *In re Paramount-Merrick, Inc.,* 252 F.2d 482, 485 (2d Cir. 1958); *In re Owl Drug Co.* Courts have additionally considered other factors such as the "undesirability of the case," "the nature and length of the professional relationship with the client," "the preclusion of other employment by the attorney due to the acceptance of the case," "whether the fee is fixed or contingent," and "awards in similar cases. *Johnson v. Georgia Highway Express,* 488 F.2d 714, 718–19 (5th Cir.1974). It is questionable whether these additional factors have any significant impact in the fee analyzation process.

■ The point of departure for evaluating a reasonable fee is to determine the number of hours reasonably expended on necessary services and to multiply such hours by a reasonable hourly rate. "This calculation provides an objective basis on which to make an initial estimate of the

value of a lawyer's services." *Hensley v. Eckerhart*, —— U.S. ——, ——, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).

> [A]n analytical approach, grounded in the number of hours expended on the case, will take into account all the relevant factors, and will lead to a reasonable result. The number of hours of work will automatically reflect the "time and labor involved," "the novelty and difficulty of the question," and "preclusion of other employment." The attorney's normal hourly billing rate will reflect "the skill requisite to perform the legal services properly," "the customary fee," and the "experience, reputation and ability of the attorney."

*Northcross v. Board of Education of Memphis City Schools,* 611 F.2d 624, 642–43 (6th Cir.1979) *cert. den.* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980). However, an attorney is not entitled to compensation for all services that he performs. To justify an award of compensation, the services rendered must be legal; they must be necessary; and they must relate to the scope and duties of the entity by whom counsel was retained.

■ A review of the chapter 11 fee application reveals that a significant amount of time charged by counsel is clearly noncompensable. Counsel requests compensation for a 3¾ hour meeting he attended on October 21, 1981, with the trustee, the attorney for the debtor and attorney for the creditors' committee to discuss "the operation and function of the trustee and the creditors' committee." The duties of a trustee and the role of a creditors' committee are spelled out in the Code. §§ 1103, 1106. Undoubtedly, questions may arise as to whether the trustee or the creditors' committee may be charged with the performance of a particular function. However, no evidence establishes that a problem existed which required discussion. Even a general discussion of the role of a trustee and creditors' committee in a chapter 11 case should not require a 3¾ hour meeting. Moreover, an attorney is not entitled to compensation for time spent in discussing abstract legal questions. An estate cannot be compelled

to pay for counsel's private educational seminars.

■ The time sheets indicate that counsel attended a 4-hour meeting with the trustee, the principals of the debtor and the debtor's counsel on October 14, 1981 to discuss whether the business should be operated or converted to chapter 7 and the assets sold. A trustee when appointed has a duty to investigate "the operation of the debtor's business and the desirability of the continuance of such business." § 1106(a)(3). Whether a business should be continued or terminated involves a business judgment. The trustee appointed had an extensive business background. He has served as a receiver in chapter XI Bankruptcy Act cases and as trustee in chapter 11 Code cases. He was appointed because of his expertise. He was retained to make this business judgment and he had the expertise to do so. Counsel for the trustee had no role to play in this determination. Counsel was retained to perform legal services for the trustee, not to perform services that a trustee was appointed to perform. An attorney is not entitled to compensation for frolicking at his whim and fancy in unassigned pastures. He is not the alter ego of the trustee, and he is not to be compensated for the duties that the trustee is required to perform. *Cle-Ware Industries, Inc. v. Sokolsky (In re Cle-Ware Industries, Inc.),* 493 F.2d 863 (6th Cir.1974) *cert. den.* 419 U.S. 829, 95 S.Ct. 50, 42 L.Ed.2d 253 (1974); *In re Eureka Upholstering Co.,* 48 F.2d 95 (2d Cir.1931); *Finn v. Childs Co.,* 181 F.2d 431 (2d Cir.1950); *In re Leader International Industries, Inc.,* 2 Bankr.Ct.Dec. (CRR) 588 (Bankr.E.D.Mich.1976) *aff'd* No. 4–91206–B (E.D.Mich. Dec. 14, 1976), *aff'd* No. 4–91206–B (6th Cir. Dec. 29, 1978). Once the trustee makes a decision to terminate, he may have the need for services of counsel to enforce that decision; but until that decision is made, the trustee has no demonstrable need for counsel.

For similar reasons, counsel is not entitled to compensation for the 2½ hour meeting he attended on November 5, 1981, with

the secured creditors and the debtor to discuss the status of the case and the prospects for rehabilitation.

█ Counsel also requests compensation for attending 3 meetings—a 5½ hour meeting on October 21, 1981, a 4-hour meeting on November 4, 1981, and approximately 3¾ hours for a meeting on November 18, 1981—meetings attended by the debtor, counsel for the debtor, the creditors' committee and counsel for the committee to discuss the prospects for successful operation and presumably to decide whether the operation of the business should be continued or whether the case should be converted to a chapter 7 case. The attendance of counsel at these meetings served no purpose. To insure that the rights of unsecured creditors are adequately protected, section 1102 requires that the court appoint an unsecured creditors' committee as soon as practicable after the entry of an order for relief. The creditors' committee was represented by experienced, competent and conscientious counsel. The trustee's attendance at the meeting was necessary. He undoubtedly had factual information which was pertinent to the creditors' committee's inquiry—information that he was required to provide to the committee by the express direction of section 1106(a)(4)(B). He was not present at the hearing in any adversary posture. He did not have any need for legal assistance at those meetings. Unlike a trustee, the members of a creditors' committee are not chosen because of their expertise, nor are they compensated for their services. They are members of the committee because they are creditors who are willing to serve. To enable them to carry out their obligation to protect the creditors they represent, they obviously have need for legal advice. Unless they are represented by competent counsel, the rights of the creditors whom they represent will not be fully protected. To the extent that the committee required legal assistance in determining an appropriate course of action, such advice was available to them from their retained counsel. The committee had no need to solicit the advice of the attorney for the trustee.

Counsel also claims compensation for 2 hours and 25 minutes of time spent attending a hearing—a hearing that lasted less than 15 minutes—concerning the creditors' committee's motion to convert the chapter 11 case. Counsel is not entitled to compensation for his attendance at that hearing. The motion was brought by the creditors' committee. The only necessary parties at that hearing were the debtor and the creditors' committee and their respective counsel.

Not only was the time spent in attending the creditors' committee meetings and the hearing on the motion to convert unnecessary, it was duplicative of time charged by counsel for the creditors' committee, whose presence was required at these meetings. "The time of two ... lawyers in a courtroom or conference when one would do, may obviously be discounted." *Johnson*, 488 F.2d at 717. *See, also, In re Cle-Ware Industries, Inc.* A debtor in financial difficulty is not to be burdened with unnecessary and duplicative costs. The sin of unnecessary and duplicative services is that they do not benefit the debtor or creditors. To burden the debtor with such costs materially lessens the ability of such a debtor to survive. If such unnecessary charges are allowed, reorganizations will "inure to the benefit, not of the distressed debtor and its creditors, but only to those engaged in saving it." *Pennish v. A. Herz, Inc.*, 81 F.2d 511, 512 (7th Cir.1936).

On November 19, 1981, counsel lists time spent discussing with the trustee, counsel for the debtor, and counsel for the creditors' committee the desirability of operating the debtor after conversion of the case. After conversion of a chapter 11 case, it may be desirable to continue operations for a limited time, if such operations will be of benefit to the estate. The determination of whether a debtor should continue to operate involves a business judgment for the trustee to make. Counsel has no duty to become involved in this decisional process. Such services are clearly not compensable. "[N]othing in the Bankruptcy [Code] per-

mits attorneys to be compensated for services ordinarily performed by [trustees]." *Cle-Ware Industries, Inc.,* 493 F.2d at 878. Courts have consistently admonished that "there should be much hesitation about compensating such wasteful labor." *Finn,* 181 F.2d at 436.

Counsel also lists an hour of time on November 19, 1981, spent with the trustee to discuss his possible testimony on the motion to convert. The trustee was merely a witness. The contest was between the debtor and the creditors' committee. The only role of the trustee was to testify as to facts which were relevant to the motion. No need existed for him to review his testimony with his attorney.

Counsel also has charged time for a conference with the trustee on November 16, to discuss the liquidation of assets of the estate in the event of conversion. The liquidation of assets is clearly a function of the trustee and not of counsel. As the Second Circuit observed:

> In conclusion, we cannot ignore the curious notion which this application discloses, that an attorney can recover for what are not legal services at all. For example, in the petition at bar are items for arranging for the sale of assets. . . . The implication behind these claims is that the receiver's attorney may recover, as for legal services, for discharging the duties of the receiver himself.

*In re Eureka Upholstering Co.,* 48 F.2d at 96.

■ On October 7 and October 8, 1981, counsel charged time for drafting an order to appoint himself as attorney for the trustee, for drafting an application and order to open a bank account for the trustee, and for drafting changes with respect to this application and order. Time spent in drafting an order for one's own appointment is noncompensable. The order appointing a trustee directs that the trustee open bank accounts in his name. A separate order with respect to bank accounts was totally unnecessary. Moreover, the court records do not reflect that any such order was entered; nor does counsel have any evidence that any such order was submitted to the court.

Deducting the hours for unnecessary and duplicative services, counsel is entitled to compensation for approximately 23 hours of services rendered. Counsel has requested that the court compensate him at the rate of $100 an hour for services rendered. However, the simple mathematical exercise of multiplying attorney's hours by an hourly rate, while a legitimate starting point for analysis, does not end the matter. *Hensley.* The reasonable rate of compensation justifiably may differ for different activities. *In re Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir.1973). Not all services are necessarily properly billable at the established hourly rate. Routine and ministerial services are to be compensated at a lower rate than purely legal services irrespective of the experience and competency of the attorney who performs them.

> [W]ithin the *purely* legal classification, there are different classifications, having to do with relative difficulty, complexity and degree of legal applications, knowledge, experience and/or intensity or persistence. For instance, litigation, research, preparation of settlements, agreements, documents, seem to this court to require a greater degree of legal talents or specialization and to be of greater value to the estate than conferences with debtor's representatives and other parties, actions of pacification of creditors, letters and telephone responses to inquiries of parties in interest, reporting and informational services to creditors and the court, routine review of claims and supportive legal documents. . . .

*In re Piedmont Development & Investment Corp.,* 3 Bankr.Ct.Dec. (CRR) at 101.

All of the compensable services were largely routine. They consisted of attending meetings with the trustee, drafting of routine orders, drafting and reviewing letters, and providing information to creditors. The application does not disclose any significant accomplishment by counsel. Not only were the services rendered routine, but the

time charged for at least some of the services is patently excessive. The time sheets list 17 telephone calls. Each call was assigned arbitrarily a time factor of 15 minutes. Rarely does a telephone call, absent unusual circumstances, last 15 minutes. Counsel has not established the existence of unusual circumstances to justify the arbitrary charge.

Based upon the foregoing analysis, counsel would be entitled to a fee of less than $2,300. However, the court has previously fixed the fee for the services rendered in the chapter 11 proceeding in the amount of $2,500. No purpose would be served at this time for modifying that allowance.

The court will now consider the application of counsel for compensation for services rendered to the chapter 7 trustee.

■ The charge of 2½ hours for services rendered on November 19, 1981, as previously indicated, is properly applicable to services rendered for the chapter 11 trustee and, therefore, must be excluded from the chapter 7 application in considering counsel's award. The application also requests compensation for 4½ hours of unrecorded administrative time (estimated at ½ hour per week for 9 weeks—October 7, 1981 through December 7, 1981). An attorney who files an application for fees "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley,* —— U.S. at ——, 103 S.Ct. at 1941. An attorney who expects compensation for services rendered is required to keep accurate and current records of work done and time spent. *Id. See also, In re National Accessories, Inc.,* 13 F.Supp. 278 (D.Neb. 1936).

> [He] must submit to the court a detailed record of the time spent on the case and the duties performed . . . .; [B]ills which simply list a certain number of hours and lack such important specifics as dates and the nature of the work performed during the hour or hours in question should be refused.

*King v. Greenblatt,* 560 F.2d 1024, 1027 (1st Cir.1977) *cert den.* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978). "There is no excuse for an established law firm to rely on estimates made on the eve of payment . . . unsupported by daily records. . . ." *In re Hudson & Manhattan Railroad Co.,* 339 F.2d 114, 115 (2d Cir.1964).

> Appointees of the court, whether receiver, trustee, or attorney, must expect their claims to be closely scrutinized by the debtor, the creditors, and by the court, and they should be meticulous in keeping accurate accounts of the various items and elements which go to making up their claim. It will not do to state in a general way services performed, and then ask a bulk allowance.

*In re National Accessories, Inc.,* 13 F.Supp. at 281. Counsel has not established entitlement to an award for the 4½ hours of estimated time.

The application also discloses that counsel has charged approximately 4 hours for 15 telephone calls. Each of these calls was arbitrarily assigned a time factor of 15 minutes. For the reason previously set forth, this charge is excessive. The services provided by counsel to the chapter 7 trustee consisted essentially of drafting an order to permit the trustee to continue limited operations during the chapter 7 proceeding and working out an agreement with the secured creditor to finance that limited operation. Compensation is awarded for the services rendered to the chapter 7 trustee in the amount of $1,000.00.

■ After the remand, counsel filed an additional claim for compensation for the time spent in prosecuting his appeal. The appeal was clearly improvident. The proper procedure for counsel to have taken was to move for a rehearing and request that the court make specific findings of fact to enable the district court to review the bankruptcy court's order. The appeal without following this procedure was fruitless. Counsel, therefore, is not entitled to compensation for taking the appeal. *See In re J.V. Knitting Service, Inc.,* 22 B.R. 543 (Bkrtcy.S.D.Fla.1982). Moreover, even if counsel had taken all the preliminary steps

necessary to insure that the appeal was not improvident, he would not be entitled to the expenses incurred in prosecuting the appeal. The law generally imposes on a party the duty to pay his own fees and expenses in vindicating his own personal interests. *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). This general rule is also applicable where a court appointed officer appeals his compensation award. *United States v. Larchwood Gardens, Inc.,* 420 F.2d 531 (3d Cir.1970). Expenses and costs in defending the allowances of court appointed officers on appeal are not proper charges against the estate. *Id.* To hold that these expenses and costs were compensable would inhibit judges from performing their duly mandated obligation to protect estates from depletion by excessive compensation demands and would "unduly chill the legitimate right" of parties in interest to question any compensation request. *Id.* at 534. Officers appointed to protect the estate are not to be permitted to burden it with costs and expenses incurred in vindicating their personal interests.

An order consistent with this opinion will be entered.