## DEE et al. v. UNITED EXCHANGE BLDG., Inc., et al.

### No. 8167.

Circuit Court of Appeals, Ninth Circuit.

Feb. 16, 1937.

Evans, McLaren & Littell, of Seattle, Wash., and Claude A. Roth and William J. Friedman, both of Chicago, Ill., for appellants.

Before WILBUR, MATHEWS, and HANEY, Circuit Judges.

HANEY, Circuit Judge.

This appeal is from an order entered March 16, 1936, fixing the compensation of appellants as reorganization manager and his attorney for services and expenses in connection with the reorganization of United Exchange Building, Inc., the debtor in a proceeding under section 77B of the Bankruptcy Act, as amended (11 U.S.C.A. § 207).

In April or May of 1935 the debtor was in default in the payment of interest of its general mortgage bonds, its income was depleted, and it was faced with bankruptcy. A reorganization was deemed necessary, and its vice president consulted appellant Dee who had wide experience in corporate reorganizations. As a result of this and succeeding conferences, Dee agreed to act as reorganization manager for the debtor, and the debtor agreed that the fee therefor should be $19,000, subject, however, to the approval of the court thereof and provided that if no reorganization was accomplished that there would be no charges for Dee's services.

At the time Dee undertook the direction of the reorganization debtor was the owner of a large office building in Seattle, Wash., its property was encumbered with a first mortgage 6 per cent. bond issue in the sum of $1,900,000 a general mortgage 6 per cent. bond issue of $600,000, a subordiated 6½ per cent. bond issue of $250,000. It was obligated upon an unsecured note in the sum of $199,388.28. It had outstanding 2,500 shares of no-par value common stock. Its operating income for a six-month period ending June 30, 1935, was $135,218.99, and on the last-mentioned date its total assets as shown by its balance sheet were $3,090,068.-34.

On June 25, 1935, a plan of reorganization was filed in the District Court, and thereafter amendments thereto were filed. In the said plan the appointment of appellant Dee as reorganization manager was specifically provided for, with wide powers, including the power to employ counsel. On December 16, 1935, the District Court entered its order approving a plan of reorganization and directing Dee to consummate it.

The plan was comprehensive and may be summarized as follows: (a) The holders of the old first mortgage bonds to receive in the new company the entire bond issue of $1,900,000 plus 19,000 shares of common stock; (b) the holders of the general or secured mortgage bonds to receive 6,000 shares of preferred stock in the new company plus 18,000 shares of the common stock thereof; (c) holders of the subordinated general mortgage bonds received 19,000 shares of the common stock of the new company; (d) the owners of debtors unsecured note of approximately $199,000 to receive 9,880 shares of common stock of the new company; (e) the holders of the debt-or's preferred stock to receive 8,100 shares of the common in the new company; and (f) the holders of the debtor's common stock to receive 2020 shares of the new common.

Applications for fees and allowances for reimbursement of expenses paid were made by both appellants pursuant to 11 U.S.C.A. § 207(c) (9), which provides in part as follows: " * * * the judge * * * (9) may allow a reasonable compensation for the services rendered and reimbursement for the actual and necessary expenses incurred in connection with the proceeding and the plan by * * * reorganization managers * * * and the attorneys * * * of any of the foregoing." Both claimants submitted detailed statements showing time devoted, services rendered, and time, place, and cause of expenses incurred.

The trial court referred the claims to a special master for hearing and report pursuant to 11 U.S.C.A. § 207(c) (11). Subsequently the special master submitted his report in which he recommended a reduction in the amounts claimed by appellants. The only exception to the special master's report was filed by appellant Dee, who contended that the allowance made by the special master was unfair and inadequate.

On March 12, 1936, the special master's report came before the trial court. A memorandum decision on all allowances recommended by the special master was rendered, in which the trial court concluded to reduce the amounts recommended to be paid to appellants. In arriving at its conclusion, the court heard no additional testimony, nor was evidence received other than that taken and heard by the master. An order was entered in accordance with the decision rendered. Appeal from that order was taken pursuant to 11 U.S.C.A. § 207(c) (9), providing that "appeals from orders fixing such allowances may be taken to the Circuit Court of Appeals independently of other appeals in the proceeding." It may be noted that no appearance was made by brief or otherwise in opposition to the appeal of Dee and Friedman taken from the order of the trial court and now presented to us.

Appellant Dee claimed a fee of $19,000. The special master recommended that he be paid a fee of $12,500. The trial court ordered him to be paid a fee of $8,000. Appellant Dee's claim for expenses was $8,-699.89; the special master recommended payment of $8,339.98 as reimbursement for

such expenses; but the trial court allowed him $8,114.89.

Appellant Friedman, attorney for Dee, claimed a fee of $10,000 for his services. The special master recommended that he be paid a fee of $8,333.34; but the trial court allowed him a fee of $5,000. Friedman's claim for expenses was $1,655.20. The special master recommended payment of $1,046.20, as reimbursement for such expenses, but the trial court allowed him $931.20.

The authority of the trial court to adopt or reject reports of special masters is stated in Equity Rule 61½ (28 U.S.C.A. following section 723) as follows: "In all references to a master, either compulsorily by the court in cases where it has the power to make a compulsory reference, or by consent of parties where consent is necessary, whether the reference be of all issues of law and fact, or only particular issues either of law or fact or both, the report of the master shall be treated as presumptively correct, but shall be subject to review by the court, and the court may adopt the same, or may modify or reject the same in whole or in part when the court in the exercise of its judgment is fully satisfied that error has been committed."

■■ By virtue of 11 U.S.C.A. § 207 (k), appeals under section 207 are governed by 11 U.S.C.A. §§ 47, 48. The matters of fees and allowances are "proceeding in bankruptcy" and appeals from orders granting or refusing to grant such fees and allowances are governed by 11 U.S.C.A. § 47(b). In re Barceloux (C.C.A. 9) 74 F.(2d) 288; Shoreland Co. v. Conklin (C.C.A. 5) 30 F.(2d) 489; Calhoun v. Stratton (C.C.A. 6) 61 F.(2d) 302; Wingert v. Smead (C.C.A. 4) 70 F.(2d) 351. On such appeals we are unable to fix the amounts of the fees and allowances,[1] because we may review questions of law only and not questions of fact.[2]

In accordance with these principles, the only question presented for our determination is: As a matter of law, was the trial court in error in rejecting the findings of the special master regarding the reasonableness of the fees and allowances?

■■■ With respect to the attorney's fee to be allowed appellant Friedman, the following quotation from In re Barceloux, supra, 294, is applicable: "In determining a reasonable fee for the services rendered by the attorneys, it was necessary to consider the time spent, the intricacy of the questions involved, the size of the estate, the opposition encountered, the results achieved, the opinion evidence touching the reasonableness of the fee, and the economical spirit of the Bankruptcy Act itself." It is proper to apply the same test in fixing the fee of the reorganization manager. In accordance with Equity Rule 61½, the special master's findings were presumptively correct when they came up before the trial court for hearing.

In refusing to accept the special master's finding regarding the fee to be allowed to appellant Dee, the trial court said: " * * * Now, Mr. Dee undoubtedly is an able man in his line of work, but his ability was not able to keep these purchasers and owners of bonds of this debtor corporation, which were sold through a business when he was actively connected with it, from sustaining a loss—not through Mr. Dee personally. There is nothing in the record and this court does not infer that Mr. Dee was responsible for the depreciation in the market which resulted directly in the loss to the bondholders of this debtor corporation along with other bondholders in the country. But Mr. Dee, as an outstanding able man in the bond and investment banking business in the country ought to be willing to give a lot of effort and a lot of that ability to the rehabilitation of the businesses that secure the bond indebtedness of this country and he ought not to expect fulsome payment for services when working in connection with reorganization of one of such business * * *" No other reason was given by the trial court for rejecting the special master's finding.

As to the time spent, the referee found that "approximately seven months of his time was taken, within which he devoted 183 full days exclusively to this work." The size of the estate was said to be $1,900,000 by the referee. Some opposition was encountered by appellant Dee. The special master found that Dee "accomplished an

[1] In re Barceloux (C.C.A. 9) 74 F.(2d) 288; Calhoun v. Stratton (C.C.A. 6) 61 F.(2d) 302. Compare: In re Paramount-Publix-Corporation (C.C.A. 2) 83 F.(2d) 408; Id. (C.C.A. 2) 83 F.(2d) 406; In re. Allied Owners Corporation (C.C.A. 2) 79 F.(2d) 187.

[2] Taylor v. Voss, 271 U.S. 176, 46 S. Ct. 461, 70 L.Ed. 889; In re Barceloux (C.C.A. 9) 74 F.(2d) 288; Calhoun v. Stratton (C.C.A. 6) 61 F.(2d) 302.

excellent result, through his skillful, effective and expeditious work." The trial court said that Dee "undoubtedly is an able man in his line of work." There was some opinion evidence as to the reasonableness of the fee to be allowed. The vice president of the debtor testified that he considered the amount of $19,000, as originally agreed upon, to be "entirely proper," to allow as the fee. Dee testified that he had participated in seventeen prior corporate reorganizations; that "in previous reorganizations my compensation has been two per cent of the outstanding first mortgage bonds regardless of their market value." Computed on that basis, the fee would have been $38,000.

With respect to the fee to be allowed to appellant Friedman, the trial court said: "It is obvious Mr. Friedman is an able man in his profession, but this statute does not contemplate that everybody has a right to go out—that every party and claimant has a right to go and hire counsel and expect the debtor to pay for their services on the basis which they might think should apply for their ordinary private engagements * * *"

Friedman testified that the time he had already spent, and the time he would be required to spend to complete his work, would be in excess of 1,000 hours. The trial court admitted Friedman to be "an able man in his profession." Friedman testified that he felt that $10,000 was "extremely fair and reasonable." Warren H. Lewis, an attorney specializing in real estate bond issues, testified in his opinion the reasonable value of Friedman's services performed and to be performed to be $10,000. The opinion of Philip D. MacBride, an attorney with considerable experience in connection with real estate bond issues, was that $10,000 was a "reasonable and fair" fee to be allowed Friedman. There is also the following statement in the special master's report: "Messrs. Joseph B. Lawler, William J. Friedman, George Harroun and Roger L. Shidler each testified that the services of the respective claimants rendered and to be rendered were reasonably worth the amount of compensation asked."

This is not a case where there is no evidence as to the reasonableness of the fees to be allowed. In cases where there is no evidence it has been said that the fees to be allowed by the trial court are based on the court's knowledge of the worth of the services, In re Curtis (C.C.A. 7) 100 F. 784.

We believe the order must be reversed and the special master's findings sustained. These findings were accompanied with a presumption of correctness; there was a total lack of evidence before the trial court, except what was taken before the special master; there was no opposition whatever to the special master's recommendation, other than by appellant Dee. There is nothing to show that the trial court considered the presumption, the evidence taken before the special master, the elements specified In re Barceloux, supra, or anything except its conviction as to the worth of the services. Under these circumstances we believe the fees to be allowed appellants are those recommended by the special master.

With respect to the amounts allowed as reimbursement of expenses to appellants, there is only one item in dispute. Each of the appellants claimed in lieu of the various sums expended for lodging, meals, and other expense, a per diem amount of $20. With respect to each appellant, the special master found "that the disbursements were actually made," but that "$20.00 per day was too high," and that "twelve dollars per day should enable one to live with comfort and dignity while traveling." Discussing this charge, the trial court said: " * * * In that connection I am reminded that the Department of Justice has authorized a per diem maintenance of $5.00 per day to everybody entitled to maintenance of that sort. I realize that it is an average that applies to the whole number of persons in the Department who are entitled to it and I also realize that in some instances it isn't enough. But I know that $12.00 a day is too much, and I am certain that $20.00 could not be considered by this court for a moment, not because it was not spent, but because it is too much to allow in this case * * *"

The trial court accordingly fixed the per diem allowances at $7.

Dee testified that in previous reorganizations he received a per diem of $20. He also testified:

"Over a period of ten years we have made it a rule in our institution that the expenses of a man while out of town on business are limited to $20 per day. This is to include rooms, meals, tips, baggage charges, and all other and sundry expenses * * *

"I generally pay between ten and fifteen dollars for my room. I pay at the present time $10. I have never had a breakdown

of my expenses, whether it costs thirty or fifteen dollars per day. One day it may cost $15 and the next day $25. I was allowed $20 per day expenses by Judge Wilson in the Baker Hotel. In the year 1933 my expenses in addition to $20 per day, while out of town, ran $2,477. This was reimbursed to me by my firm."

Friedman testified: "I paid a total hotel bill of $251.00 for approximately 23 days in Seattle. I expended $209.00 for cash disbursements incurred en route to Seattle and while there. This consisted of meals, taxi cabs, laundry, incidentals of such nature. As far as I could calculate, I expended approximately $225.00 in addition which I did not charge to the Estate * * *"

Under the statute, reimbursement for expenses may be allowed if the amounts were actually incurred and were necessary. The special master's finding that a sum in excess of $12 per day was too high, was to be presumed correct, which, in view of the fact that he found the excess amount actually incurred, could mean only that the excess amount was not necessary. He found $12 to be actually incurred and necessary.

Here again, if the trial court had considered with his own judgment, the presumption of correctness attending the special master's finding, and the evidence, it is apparent that the special master's finding should have been sustained.

Reversed, with directions to allow the fees, and expenses recommended by the special master.