## COHN v. EDLER.
### No. 8303.

Circuit Court of Appeals, Ninth Circuit.
June 14, 1937.

Walter Rowson, of Reno, Nev., for appellant.

Thatcher & Woodburn, Geo. B. Thatcher, Wm. Woodburn, and Wm. J. Forman, all of Reno, Nev., and Clarence A. Shuey and Grant H. Wren, both of San Francisco, Cal., for appellee.

Before WILBUR, GARRECHT, and HANEY, Circuit Judges.

824

HANEY, Circuit Judge.

A referee in bankruptcy has appealed from an order disallowing items claimed by her in an account submitted to the bankruptcy court in a bankruptcy matter.

The Owl Drug Company, a Nevada corporation, was adjudicated a bankrupt on October 10, 1932, on its voluntary petition. Its assets consisted of 120 retail drug stores, located in several states, warehouses for such stores, and stock in two other corporations. On the same date the courts below made a general reference order, referring the bankruptcy matter to appellant, as referee in bankruptcy, and appointed a receiver. Appellant called the first meeting of creditors to be held on October 29, 1932. At that meeting the creditors failed to appoint a trustee, and the meeting was continued. Appellant thereafter appointed one Richard Kirman trustee who accepted the appointment and qualified on November 4, 1932. He resigned the following day.

Thereafter a petition was filed asking that the order of reference be revoked. After hearing on November 7, 1932, the court below said: "The Court is impressed that this case is one very much out of the ordinary in so far as bankruptcy proceedings in this court are concerned. It is a case in which very large interests are represented, all located entirely without this district * * * in view of what has transpired and the importance of this case, and because it is a matter that is liable at any time to involve serious questions of law as well as facts, and that this Court of itself must eventually determine all of those questions, the Court will feel better satisfied if all important hearings hereafter are directed before the Court * * *"

The court below thereupon entered an order setting aside the order of general reference, "until, and subject to, the further order of this Court." The order further provided: " * * * that, subject to the further order of this Court, all proceedings in the matter of said Bankrupt be had in this Court, excepting that the Referee shall retain power to, and she is hereby authorized and directed to, issue and serve all notice or notices to creditors required by law for a meeting of creditors to be held before this Court * * * for the election of a Trustee or Trustees, or to issue and serve any other notice or notices to creditors as may be required for the hearing of any matter before this Court, as the Court may direct."

Thereafter, on December 20, 1932, an order of the lower court directed appellant to give notice of hearing report and account of the receiver. On April 10, 1933, a nunc pro tunc order was entered authorizing appellant to receive, file, act upon, and transmit to the clerk of the lower court, all claims of creditors of the bankrupt. On June 3, 1933, an order was entered, by which the bankruptcy matter was, as stated therein,

" * * * specially referred to [appellant] * * * with limited authority only for the following purposes:

"(1) To pass upon any and all claims of creditors filed against bankrupt corporation in the above entitled matter.

"(2) To issue and serve any notice or notices to creditors as may be required for the hearing of any matter before this Court, as the Court may direct.

"(3) To declare all dividends and to enter appropriate orders for the disbursing of moneys to creditors by the Trustee.

"It is Further Ordered that the Court reserves the right to determine what part of the fees and commissions allowed to referees under section 68 [11 U.S.C.A.] of the Bankruptcy Act shall be paid to the referee herein."

On February 15, 1934, appellant was directed by order to give notice of a hearing upon the trustee's report, upon applications for allowances of compensation, and upon application for the payment of a dividend. On September 14, 1935, appellant was directed by order to give notice of a hearing upon a report, and upon a petition asking authority to compromise certain controversies and to pay a dividend. On July 14, 1936, appellant was directed by order to give notice of a hearing of a trustee's report, the question of payment of final dividend and application for allowances of compensation.

On August 3, 1936, appellant filed her account. In that account she claimed a total of $20,009.99. The account included the following items:

1. Notices to creditors:
27,615 notices @ 15¢..... $4,142.25
1,495 notices @ 25¢.....   373.25

                                    $4,515.50
2. Indemnity expenses for stenographic services, office rent, and janitor service .......................... $ 6,035.00
3. Traveling expenses—35 trips @ $10 each ................................ $   350.00
4. Commissions on disbursements to creditors .......................... $12,615.38

11 U.S.C.A. § 68(a) provides that: "Referees shall receive as full compensation for their services, payable after they are rendered, a fee of $15 deposited with the clerk at the time the petition is filed in each case, except when a fee is not required from a voluntary bankrupt, and 25 cents for every proof of claim filed for allowance, to be paid from the estate, if any, as a part of the cost of administration, and from estates which have been administered before them 1 per centum commissions on all moneys disbursed to creditors by the trustee, or one-half of 1 per centum on the amount to be paid to creditors upon the confirmation of a composition."

Subdivision (c) provides: "In the event of the reference of a case being revoked before it is concluded, and when the case is specially referred, the judge shall determine what part of the fee and commissions shall be paid to the referee."

11 U.S.C.A. § 112 provides: "Neither the referee, receiver, marshal, nor trustee shall in any form or guise receive, nor shall the court allow him, any other or further compensation for his services than that expressly authorized and prescribed in this title."

Pursuant to 11 U.S.C.A. § 53, which authorizes the Supreme Court to make all necessary rules and orders for carrying out the provisions of the Bankruptcy Act, that court promulgated General Order 35, of which subdivision 2 (11 U.S.C.A. following section 53) provides: "The compensation of referees, prescribed by the act, shall be in full compensation for all services performed by them under the act, or under these general orders; but shall not include expenses necessarily incurred by them in publishing or mailing notices, in traveling, or in perpetuating testimony, or other expenses necessarily incurred in the performance of their duties under the act and allowed by special order of the judge."

Neither party questions the power of the District Court to make rules in bankruptcy matters. 28 U.S.C.A. § 731 authorizes such court generally to make rules, but bankruptcy matters are included, if at all, by implication. No specific part of the Bankruptcy Act confers such power on such court. Without expressing an opinion as to the power of such court, but assuming that the power exists, then rule 10 of the court below is in part as follows: "(c) Referees will be allowed at the rate of 15 cents each for notices to creditors, sent in compliance with law, to cover expense of stationery, clerk hire, and office rent; and he shall also be reimbursed for any other actual and necessary expense covered by General Order 35, subdivision 2, provided that for the required mailing of copy of petition for discharge and order to show cause the rate shall be 15 cents for each creditor."

Rule 7(c) provides that referees shall be allowed 25 cents for each notice of the closing of a bankrupt estate sent.

Upon hearing appellant's account, the trial court disallowed the $6,035 claimed for indemnity expenses, on the theory that the flat rate provided by the district court rule covered expenses of "stationery, clerk hire, and office rent," and therefore no additional allowance therefor could be made. The trial court further reduced the amount of traveling expenses to $78.75, being 30 trips at the rate of $2.25 per trip, on the ground that there was no showing that $10 a trip was in fact "incurred" as provided in General Order 35, subd. 2. With respect to the commissions, the trial court found:

"The reference here was not general, but special * * *

"* * * As a consequence of this order, many of the matters (including even creditors' meetings) which are ordinarily handled by the referee, were handled or heard by the Judge. Many of the administrative matters usually falling upon the shoulders of the referee were done by the Clerk of the Court and the trustee.

"The Judge exercised direct supervision over the funds (running into millions) passing through the hands of the trustee during the operation of the business, and even after the sale.

"There is no warrant in the record for the referee's claim that a good deal of the work done by the Clerk (and the trustee) was a duplication of hers. The fact is undisputed that much of the work, ordinarily done by a referee, was not done by her * * * * "

The trial court allowed appellant $5,000 as compensation, saying that "this amount is adequate and ample compensation, over and above the other fees and expenditures allowed."

Appellant has brought this appeal under 11 U.S.C.A. § 47(b), her petition therefor being presented to and allowed by this court. Appeal under that section raises questions of law only. Dee v. United Ex-

826

change Bldg. (C.C.A.9) 88 F.(2d) 372, 374, and cases cited.

■ First. The items for stenographic services, office rent, and janitor service, referred to by the parties as "indemnity expenses" are properly allowable under General Order 35, subd. 2, if "necessarily incurred." The bankruptcy court by its rule 10(c) allows fifteen cents for each notice "to cover expense of stationery, clerk hire, and office rent." Appellant argues that such rule "is patently not intended to and does not say that such allowance shall cover all expenses for stationery, clerk hire, and office rent." She says that she wrote letters in relation to this proceeding "numbered in thousands," extending over a period of four years; that objections were filed as to 113 claims, on which 82 hearings were set; 56 hearings held, and 56 written opinions were prepared by her; and that this burden of labor compelled her "to employ stenographic assistance additional to that made necessary by the mere preparation and mailing of notices or filing and conservation of claims." Such a construction would do violence to the rule. We believe that the rule means what it says, and that the rule measures the amount which can be allowed, except, possibly, in one instance. Since the court adopted the rule, we suppose it might be said that it has power to relax, modify, or abolish it in any case. It did not do so here, so that question is not before us. What we have said is based on the assumption that the bankruptcy court has power to adopt such a rule, because the parties have based their argument on such assumption. However, the question as to whether the bankruptcy court has power to make such a rule, we expressly leave open.

■ Second. Under General Order 35, subd. 2, the bankruptcy court may make an allowance to referees for "expenses necessarily incurred by them * * * in traveling." Appellant offered no evidence bearing on what sum was "necessarily incurred." Any allowance over the amount "necessarily incurred" would be compensation, which is expressly forbidden by 11 U.S.C.A. § 112. The court below took judicial notice of the common carrier fare. The number of trips at this rate was the amount allowed. There was no error in this regard. Appellant contends that the trial court disregarded an established custom in not allowing the flat rate of $10 per trip. The law is specified in the general order. What was said in United States v. Macdaniel, 32 U.S.(7 Pet.) 1, 14, 8 L.Ed. 587, that "Usage cannot alter the law" disposes of this contention.

■■ Third. There is yet to be considered only the item of compensation. Appellant contends that, although an order was entered revoking the general reference, the arduous and extensive duties performed by her shows that, in fact, the reference was general, and therefore she was entitled to the amount specified 11 U.S.C.A. § 68(a). She says that, of 186 items of service performed by the court on 93 separate days, only 28 of the items so performed were strictly duties of the referee, and that 97 items were duties of the court, in the absence of a court rule or order extending the powers or the duties of the referee under 11 U.S.C.A. § 66 which provides the jurisdiction of referees.

The court found that this contention was unfounded, and there is substantial evidence to support the finding. It is therefore, on this appeal, conclusive.

■ Finally appellant contends that she is entitled to an allowance for acting as special master. This argument is based on the assumption that she performed duties "which cannot be reasonably viewed as within the prescribed duties of the Referee." She therefore says that the duties were performed as a special master and that she was entitled to extra compensation. However, the court did not find that the duties she performed were performed in the capacity of a special master. In fact we understand that the duties were performed under special reference. There is therefore no merit in this contention.

Affirmed.