In the Matter of BARRY YAO COMPA-
NY, a co-partnership consisting of Bar-
ry Baruch, aka Bill Barry, and Jimmy
Yao, co-partners; and Barry Baruch
aka Bill Barry, an individual; and Jim-
my Yao, an individual, Bankrupts.

No. 62410.

United States District Court
S. D. California,
Central Division.

March 31, 1959.

**376**

Bertram S. Harris, Los Angeles, Cal., petitioner on review, pro se.

Francis F. Quittner and Milford S. Zimmerman, Los Angeles, Cal., respondents on review, pro se.

MATHES, District Judge.

These bankruptcy proceedings are now before the Court upon a petition for review of an order by the Referee in Bankruptcy allowing attorneys' fees to special counsel for the receiver and to the attorney for the creditors.

Proceedings were originally commenced in August of 1954 by the filing of an involuntary petition under § 18, sub. a of the Act [11 U.S.C.A. § 41, sub. a] against (1) Barry Yao Company, a copartnership, consisting of Lottie Barry, Bill Barry (Lottie's husband), and Jimmy Yao, copartners; and (2) Lottie Barry, Bill Barry, and Jimmy Yao, individually. Following intervention by various creditors, a receiver who eventually became trustee was appointed and took possession of the assets of the alleged bankrupts. Bankruptcy Act § 69, 11 U.S.C.A. § 109.

For reasons to be mentioned later, the proceedings against Lottie Barry, as an alleged general partner, were subsequently dismissed with prejudice. Thereafter in April of 1956, Bill Barry and Jimmy Yao consented to an adjudication of bankruptcy, and an order was entered accordingly. Bankruptcy Act § 18, subs. d, g, 11 U.S.C. § 41, subs. d, g.

In due course the proceedings drew to a close, petitions for fees and expenses were filed [Bankruptcy Act § 62, subs. a, d, 11 U.S.C.A. § 102, subs. a, d] and, following the final meeting of creditors [Bankruptcy Act §§ 55, subs. e, 58, subs. a, 11 U.S.C.A. §§ 91 subs. e, 94 subs. a], the Referee entered the order under review [Bankruptcy Act § 28, 11 U.S.C.A. 66.] In February of 1958 the bankrupts were discharged pursuant to § 14 of the Act [11 U.S.C.A. § 32.]

Within the prescribed period, Bertram Harris, as attorney for the petitioning creditor and various intervening creditors, filed his petition for review of the Referee's order [Bankruptcy Act § 39, sub. c, 11 U.S.C.A. § 67, sub. c; Castle Cotton Mills Co. v. Gardner, 9 Cir., 1953, 207 F.2d 690, 691], praying that the order be reversed as "clearly erroneous" and an "abuse of discretion" as to (1) the attorney's fee of $900 allowed him for ordinary services as attorney for the petitioning and intervening creditors; (2) the denial of any fee at all to him for so-called extraordinary services rendered for the benefit of the bankrupt estate; and (3) the allowance of attorneys' fees in the sum of $3,767 to Francis F. Quittner, of the firm of Quittner & Stutman, and to Milford S. Zimmerman, of the firm of Zimmerman, Kelly and Thody, for services rendered on behalf of the bankrupt estate as special counsel for the receiver.

The petition for review further prays that no fees whatever be awarded to Messrs. Quittner and Zimmerman; and that an order be entered awarding to petitioner Harris the fees sought in his original petition, namely, $3,000 for ordinary services plus $5,000 for extraordinary services.

At the hearing on the petition for review, this Court opened the record and received new evidence. General Order 47, 11 U.S.C.A. following section 53; In re American Mail Line, Ltd., 9 Cir., 1940, 115 F.2d 196.

The petitioner on review vigorously asserts that Mr. Quittner, who had represented the bankrupts from the outset of the bankruptcy proceedings, and Mr. Zimmerman, who had represented bankrupt Bill Barry in contesting the will of alleged bankrupt Lottie Barry, his deceased wife, appeared for interests adverse to the bankrupt estate and hence should take nothing as special counsel for the receiver. See: General Order 44; 11 U.S.C.A. following section 53; Woods v. City National Bank & Trust Co. of Chicago, 1941, 312 U.S. 262, 267–269, 61 S.Ct. 493, 85 L.Ed. 820; In re Woodruff, 9 Cir., 1941, 121 F.2d 152, certiorari denied, Lynch v. Jackson, 1941, 314 U.S. 652, 62 S.Ct. 99, 86 L.Ed. 522; In re Stratton Inc., 2 Cir., 1931, 51 F.2d 984, certiorari denied Jonas & Neuburger v. General Motors Acceptance Corp., 1932, 284 U.S. 682, 52 S.Ct. 199, 76 L.Ed. 576; In re Rogers-Pyatt Shellac Co., 2 Cir., 1931, 51 F.2d 988.

Petitioner Harris urges further that even if Messrs. Quittner and Zimmerman are entitled to some compensation for their services, the Referee's allowance of $3,767 is "manifestly disproportionate" and that they should at most take $400 because of "the very little work done by them."

Also to be considered by the Court *sua sponte*, though not raised by the petitioner, are questions lurking throughout the record as to whether Messrs. Quittner and Zimmerman made full and accurate disclosure either (1), in the petition for their employment, of the facts as to the "necessity for employing counsel at all", as contemplated by General Order 44 [11 U.S.C.A. following section 53; In re Woodruff, supra, 121 F.2d at page 155; cf.: In re Insull Utility Investments, Inc., 7 Cir., 1935, 74 F.2d 510; Rodgers v. Bromberg, 5 Cir., 1931, 53 F.2d 723, certiorari denied, 1932, 285 U.S. 542, 52

S.Ct. 314, 76 L.Ed. 934], or (2), in the petition for their fees, of the facts as to "the value and the extent of the services rendered", as contemplated by § 62, sub. d of the Act [11 U.S.C.A. § 102, sub. d].

From the entire record and the evidence adduced upon the hearing of the petition for review, the material facts are found as follows: Messrs. Quittner and Zimmerman were appointed special counsel for the receiver, Ralph Meyer, on June 27, 1955. At the time of this appointment, Mr. Quittner was representing the alleged bankrupts, Barry Yao Company and Bill Barry and Jimmy Yao, as he had done from the inception of the involuntary proceedings. He had previously also represented Lottie Barry who, until dismissed, was allegedly liable as a general partner for the debts of the bankrupt partnership.

On November 5, 1954, approximately three months after the involuntary petition was filed, Lottie Barry died. Shortly thereafter her will was admitted to probate, and Union Bank & Trust Co. of Los Angeles was appointed Special Administrator with powers of general administration, and retained as its attorneys Messrs. Charles Katz and Scheinman and Scheinman who, subsequent to November of 1954, have appeared for the estate of Lottie Barry, deceased, in these proceedings.

Following admission of Lottie Barry's will to probate, her surviving husband, Bill Barry, together with her two surviving sisters, all of whom were excluded by the will, filed a contest in the State court on the grounds that, at the time of making the will, the decedent was not of sound mind and had been subjected to the undue influence of one of the principal beneficiaries. Throughout the will contest, Bill Barry and the surviving sisters were represented by Mr. Zimmerman.

In the petition for an order authorizing the employment of Messrs. Quittner and Zimmerman as special counsel for the receiver, which Mr. Quittner prepared and the receiver executed and filed on June 27, 1955, it is *inter alia* alleged: that the will contest was then pending; that it appeared the will contest would be expensive, but "it is probable * * * that if negotiations are carried on with the * * * Special Administrator * * * and the beneficiaries that a compromise may be obtained * *"; that Messrs. Quittner and Zimmerman were then "fully familiar with this litigation and have made all necessary preparations for trial thereof"; and that the bankrupt estate will benefit to the extent of any recovery made on behalf of alleged bankrupt Bill Barry from Lottie's estate. See Bankruptcy Act § 70, sub. a, 11 U.S. C.A. § 110, sub. a.

The prayer of this petition under General Order 44 is that the receiver be allowed to employ Messrs. Quittner and Zimmerman for the purpose "of either completing the * * * litigation described * * * or presenting to this court for its approval * * * any proposed compromise that may be offered. * * *" On the same day, June 27, 1955, the Referee granted the petition and signed an order authorizing the employment.

Messrs. Quittner and Zimmerman then entered upon their duties as special counsel for the receiver. Six months later, in January of 1956, a final agreement on a settlement had been reached by the parties, ratified by the creditors, and approved by both the probate and the bankruptcy courts. Pursuant to that agreement, the Special Administrator of Lottie Barry's estate paid over to the bankrupt estate the agreed sum of $15,000. In return, the will contest handled by Messrs. Quittner and Zimmerman for the receiver was dismissed with prejudice, as was the claim theretofore pressed by Mr. Harris for the creditors that Lottie was liable as a general partner of the allegedly bankrupt partnership. Also dismissed were two state-court actions brought against Lottie by creditors represented by Mr. Harris. So the final settlement agreement covered other matters as well as the contest to Lottie's will.

Once the settlement was consummated, the authorized duties of Messrs. Quittner and Zimmerman as special counsel for

the receiver came to an end, and they thereafter performed no services for the receiver or for the trustee. In due course they filed their petition for an allowance of fees outlining the services claimed to have been rendered for the bankrupt estate while serving as special counsel, and praying that they be awarded $5,000, i. e. one-third of the amount obtained under the settlement agreement. Upon this petition the Referee allowed attorney's fees of $3,767, as set forth in the order under review.

By their petition for fees, Messrs. Quittner and Zimmerman represented to the bankruptcy court, either expressly or by inescapable implication, that "following" their employment as special counsel for the receiver they had "made a thorough investigation of potential witnesses and record facts" in the hope of establishing those facts upon which a successful will contest might be predicated; that as a result of such investigation they determined that the facts and practicalities were such that it was extremely improbable that the will contest could be successfully concluded; that they hence "proceeded to negotiations with the executor for the purpose" of effectuating a "compromise  *  *  *  [or]  *  *  * settlement of said contest"; that they had "expended approximately 160 hours in the performance of the special services" for the bankrupt estate, while acting as special counsel for the receiver; that "the sum of $15,000 finally agreed upon represented an increase of more than 100% over the original 'nuisance' offer suggested by the executor's attorneys"; and that the services rendered "in this capacity were purely on a contingent basis, and had no recovery been made, no application for compensation would have been filed."

Yet they omitted to tell the bankruptcy court in their petition for fees that a substantial portion of the 160 hours allegedly expended had been spent, and that a large part of the services described in the petition had been rendered as attorneys for and on behalf of Bill Barry alone, before they were employed by the bankrupt estate,—and not "following the issuance of the  *  *  * order" appointing them special counsel for the receiver. They also failed to reveal in their petition to the bankruptcy court that the investigation described in their petition for fees, as well as "substantially all negotiations" with the attorneys for the Special Administrator of Lottie Barry's estate, took place prior to their employment by the bankrupt estate in June of 1955, and not after their appointment by the Referee.

Moreover, the claim against Lottie's estate was presented to the Referee as a contingent matter and the fee in question was claimed as a "contingent fee". But the bankruptcy court was not informed that one month prior to the employment of Messrs. Quittner and Zimmerman as special counsel, Mr. Zimmerman had reached a virtual agreement with one of the attorneys for the Special Administrator [Norman Scheinman, Esquire] to settle the will contest on terms substantially the same as those finally approved by the bankruptcy court in January of 1956. In this connection the record and the evidence adduced upon the hearing combine to disclose that in May of 1955, Mr. Zimmerman on behalf of Bill Barry and Mr. Scheinman on behalf of the Special Administrator had agreed to a dismissal of the will contest with prejudice in return for the payment of $15,000 in cash; the proposed agreement "not to be binding" until a settlement was also "effectuated with the bankrupt estate" (not then represented by Messrs. Quittner and Zimmerman), nor until Lottie's surviving sisters, also represented by Mr. Zimmerman, "had expressly consented in writing", and the probate and bankruptcy courts had given their approval.

As this phase of the matter was explored upon the taking of evidence at the hearing on the petition, the following colloquy took place:

"The Court: I want to be clear on this, now: As I understand from Mr. Zimmerman, the settlement was tentatively agreed upon in May of 1955 and this ap-

pointment [of special counsel for the receiver] was made in June of 1955. * *

"Mr. Quittner: I think it was just in a negotiation stage. Because there were many negotiations that were carried on in my big office in which I sort of acted as a moderator * * * in which the question of the settlement was discussed. It was not until six months later that the final figures were actually agreed upon. * * * "

* * * * * *

"Mr. Zimmerman: May I make a comment in that connection?

"The Court: Yes.

"Mr. Zimmerman: There is no question and I say this regardless of what injury it does our case, Mr. Quittner—that in May of 1955, as that letter indicates, I made an offer to Mr. Scheinman to accept $15,000 in lieu of the will contest and I think, as I advised the Court from the stand, that within a very short time, a matter of days, or maybe a week or two more, there was tentatively an agreement between Norman Scheinman and myself that he would recommend that amount as far as he was concerned. Now, all of these things that happened subsequently with reference to the settlement of that question, of which I know, were things, implementations, things, that had to be done, because Norman Scheinman could not speak for other people any more than I could. * * * "

Thus in late May or early June of 1955, prior to the petition for appointment of Messrs. Quittner and Zimmerman as special counsel for the receiver, Mr. Zimmerman had already completed "substantially all negotiations" and had reached virtual agreement in settlement of the will contest.

■ It is well established of course that attorneys for a receiver or trustee are not entitled to any compensation for services, however beneficial to the bankrupt estate, if rendered prior to their appointment by the Referee in compliance with General Order 44. 11 U.S.C.A. following section 53; Beecher v. Leavenworth State Bank, 9 Cir., 1950, 184 F.2d

498, 500–501; In re National Accessories, Inc., D.C.D.Neb.1936, 13 F.Supp. 278, 283; cf.: Albers v. Dickinson, 8 Cir., 1942, 127 F.2d 957; In re Porto Rican American Tobacco Co., 2 Cir., 1941, 117 F.2d 599, 602; and see in general: 3 Collier on Bankruptcy, § 62.12 at 1468–1470 (14th Ed. 1957); and 6 Remington on Bankruptcy §§ 2719, 2720 (5th Ed. 1952).

So the specific problem presented is whether attorneys who misrepresent "the value and extent of the services rendered" as counsel for a receiver, when petitioning for fees pursuant to § 62, sub. d of the Bankruptcy Act, are entitled to compensation for such services as they in fact rendered during their employment by the receiver; and if so, whether such misrepresentations affect the amount of the allowance to which the attorneys would otherwise be entitled.

Section 62, sub. d of the Bankruptcy Act [11 U.S.C.A. § 102, sub. d] provides in relevant part that: "A receiver or trustee or the attorney for any of them, or any other attorney, seeking compensation for services rendered by him in a proceeding under this title or in connection with such proceeding, shall file with the court his petition setting forth the value and extent of the services rendered, the amount requested * * *."

The initial inquiry then is as to what disclosures and statements are called for by the phrase "setting forth the value and extent of the services rendered"; and next as to what consequences follow failure of compliance with the statutory mandate. Since only one case has been found even tangentially in point [see: In re McGrath Mfg. Co. of Omaha, Neb., D.C.D.Neb.1951, 95 F.Supp. 825, 829], the matter appears to be one of first impression.

■ As to the first point of inquiry, it is unnecessary to look beyond the words of § 62, sub. d itself. The phrase "value and extent of the services rendered", if given a normal and customary meaning [City of Lincoln v. Ricketts, 1936, 297 U.S. 373, 376, 56 S.Ct. 507, 80 L.Ed. 724; Magnano Co. v. Hamilton,

1934, 292 U.S. 40, 46–47, 54 S.Ct. 599, 78 L.Ed. 1109; cf. United States v. Embassy Restaurants, Inc., 79 S.Ct. 554], clearly calls for a full and accurate statement in order to constitute "setting forth the value and extent of * * * services rendered."

The desirability of such a requirement is apparent. Referees have always lacked both time and funds to investigate the many petitions for fees which come before them. Cf. Report of The Attorney General's Committee on Bankruptcy Administration (1940). The practicalities *ex necessitate* require that the Referee rely upon a petitioning attorney to present accurately and fully "the extent" of the services actually rendered. Cf.: In re McGrath Mfg. Co. of Omaha, Neb., supra, 95 F.Supp. at page 829; In re National Accessories, Inc., supra, 13 F. Supp. at page 281; In re Flaherty, D.C. Mont.1924, 295 F. 699, 701. Once fully apprised of the facts, the Referee will be able to place the proper value on the services in question. In re Associated Towel & Linen Supply Co., D.C.S.D.Cal.1934, 7 F.Supp. 699; and see 3 Collier on Bankruptcy, supra, § 62.38.

■ Statute aside, attorneys as fiduciaries, in seeking fees from their clients, labor under the duty of fully and accurately *disclosing without misrepresentation all material facts.* Fiske v. Buder, 8 Cir., 1942, 125 F.2d 841, 846–849; Graeber v. McMullin, 10 Cir., 1932, 56 F.2d 497; Ridge v. Healy, 8 Cir., 1918, 251 F. 798.

Here Messrs. Quittner and Zimmerman failed fully and accurately to disclose in their petition the material facts as to the "value and extent" of their services as special counsel for the receiver, not only by seeking fees for services actually rendered prior to their appointment pursuant to General Order 44 [Beecher v. Leavenworth State Bank, supra, 184 F.2d at pages 500–501], but also in seeking to obtain such fees on a claimed "contingent" basis calling for a substantially larger allowance from the bankrupt estate than would otherwise be appropriate [In re Barceloux, 9 Cir., 1934, 74 F.2d 289, 291–294].

As to the consequences of such a failure to comply with the statutory mandate that an attorney "seeking compensation * * * shall file * * * [a] petition setting forth the value and extent of the services rendered", § 62, sub. d is silent. But consideration of a bit of history will help serve to fill this statutory gap.

Prior to the enactment of § 62, sub. d in 1938 [52 Stat. 872; see H.R.Rep. No. 1409, 75th Cong., 1st Sess. (1937) at p. 9; and Senate Report No. 1916, 75th Cong., 3d Sess. (1938)], the fees of an attorney for a receiver or trustee were regarded solely as expenses of administration, and hence were allowable under § 62, sub. a. In re Owl Drug Co., D.C.D. Nev.1936, 16 F.Supp. 139, affirmed sub nom Cohn v. Elder, 9 Cir., 1937, 90 F.2d 823; Page v. Rogers, 6 Cir., 1906, 149 F. 194, reversed on other grounds, 1909, 211 U.S. 575, 29 S.Ct. 159, 53 L.Ed. 332; In re Wallace, D.C.E.D.Okl.1929, 14 F.2d 534; but see In re Lustron, 7 Cir., 1952, 196 F.2d 975; In re Rome, D.C.D.N.J. 1908, 162 F. 971. There was no statutory provision expressly applicable to petitions for fees as attorney for a receiver or trustee.

However, until amended in 1936, General Order 42 required that "Every attorney * * * seeking an allowance of compensation * * * for services rendered * * * shall file * * * a petition under oath setting forth a full and detailed statement of such services * * * [and] the amount claimed therefor * * *." See: General Order 42, 11 U.S.C.A. following section 53, as adopted April 13, 1925, and as amended April 17, 1933 and June 1, 1936. It has been suggested that § 62, sub. d "incorporates * * * the thought behind General Order 42", and that the requirements of both should be held to be substantially identical. [3 Collier on Bankruptcy, supra, § 62.38; and see In re McGrath Mfg. Co. of Omaha, Neb., supra, 95 F.Supp. at page 829.

Although the legislative history of § 62, sub. d reveals little more than that expenses were to be "more closely and specifically regulated" than theretofore required by the Act [H.R.Rep. No. 1409, 75th Cong., 1st Sess. (1937) at p. 9], existing practicalities and past circumstances of which the Congress assuredly was aware are equally to be taken into account. People of Puerto Rico v. Shell Co., Ltd., 1937, 302 U.S. 253, 257–258, 58 S.Ct. 167, 82 L.Ed. 235; Atlantic Cleaners & Dyers, Inc. v. United States, 1932, 286 U.S. 427, 435, 52 S.Ct. 607, 76 L.Ed. 1204; Citizens Bank of Louisiana v. Parker, 1904, 192 U.S. 73, 80–81, 24 S.Ct. 181, 48 L.Ed. 346; United States v. Wong Kim Ark, 1898, 169 U.S. 649, 653–655, 18 S.Ct. 456, 42 L.Ed. 890; Holy Trinity Church v. United States, 1892, 143 U.S. 457, 463–465, 12 S.Ct. 511, 36 L.Ed. 226.

Extravagant and unwarranted costs, including attorneys fees, had plagued honest and efficient administration of bankrupt estates, and came to be denounced as "crying evils". Realty Associates Securities Corp. v. O'Connor, 1935, 295 U.S. 295, 299, 55 S.Ct. 663, 79 L.Ed. 1446; and see: Levin v. Barker, 8 Cir., 1941, 122 F.2d 969, certiorari denied, 1942, 315 U.S. 813, 62 S.Ct. 799, 86 L.Ed. 1212; In re Consolidated Distributors, Inc., 2 Cir., 1924, 298 F. 859; In re Curtis, 7 Cir., 1900, 100 F. 784. So the general policy had long been to reduce all costs, including attorney's fees, to a reasonable minimum consistent with securing efficient administration and able legal counsel. See: 3 Collier on Bankruptcy, supra, § 62.05; 6 Remington on Bankruptcy, supra, § 2682; compare: Nadler, Fallacies In Judicial Attitudes Toward Legal Fees in Bankruptcy, 28 Journal of the National Association of Referees in Bankruptcy 10 (January 1954).

In 1935, the Supreme Court had admonished that interpretation of the bankruptcy laws "must be adapted to [these] aims." Realty Associates Securities Corp. v. O'Connor, supra, 295 U.S. at pages 299–300, 55 S.Ct. at page 665.

Consistent with this admonition, "old" General Order 42—the predecessor in function of § 62, sub. d [3 Collier on Bankruptcy, supra, § 62.38]—was construed so that no fees whatever were allowable without strict compliance, even though beneficial services had been rendered. See: Albers v. Dickinson, supra, 127 F.2d at pages 960–961; In re Stratton, supra, 51 F.2d at pages 987–988; In re California Land Buyers Syndicate, D.C.S.D.Cal.1938, 22 F.Supp. 183, 186–187.

■ Moreover, General Order 44 [11 U.S.C.A. following section 53]—which serves as "the main 'police' measure as to employment of counsel by receivers and trustees" [6 Remington on Bankruptcy, supra, § 2719]—has been similarly construed to require strict compliance, absent which all fees are denied. Cf.: Woods v. City National Bank & Trust Co. of Chicago, supra, 312 U.S. at pages 267–269, 61 S.Ct. at pages 496–497; In re Woodruff, supra, 121 F.2d 152; In re Eureka Upholstering Co., Inc., 2 Cir., 1930, 48 F.2d 95.

To apply a different rule under § 62, sub. d would, no less surely than under General Orders 42 and 44, "destroy the safeguards of the law and lessen the prevention of abuses." Weil v. Neary, 1928, 278 U.S. 160, 173–174, 49 S.Ct. 144, 149, 73 L.Ed. 243.

■ Both precedent and policy, then, compel the conclusion that § 62, sub. d be held to require that where, as at bar, an attorney in his petition petitioning for fees materially misrepresents to the bankruptcy court "the value and extent of the services rendered" as counsel for a receiver or trustee, he should not be awarded any fee, even though the services may have been beneficial to the estate.

■ While requiring acceptance on review of the Referee's findings of fact "unless clearly erroneous", General Order 47 [11 U.S.C.A. following section 53] permits the District Court in its discretion to open the record of the proceedings had before the Referee, with or without

motion by an interested party, and "receive further evidence". In re American Mail Line, Ltd., supra, 115 F.2d 196.

■ It is also true that an allowance of compensation is merely an administrative order [In re India Wharf Brewery Co., Inc., 2 Cir., 1938, 96 F.2d 710, 712; In re Barceloux, supra, 74 F.2d 288], and as such is always open to review and reconsideration by the District Judge, *sua sponte* if necessary, until the bankrupt estate is finally closed [In re Insull Utility Investments, Inc., supra, 74 F.2d at pages 514–516; Goodman v. Street, 9 Cir., 1933, 65 F.2d 686, 687; In re Stillwell, 6 Cir., 1926, 12 F.2d 205], particularly where possible misconduct is afoot [In re De Ran, 6 Cir., 1919, 260 F. 732, 739].

■ If the District Court upon review opens the proceedings, receives further evidence, makes findings of fact, and redetermines the proper allowances of fees to attorneys or court officers, the Referee's findings and conclusions are necessarily superseded to the extent inconsistent with the findings and conclusions of the reviewing Court, since the determinations of the reviewing Court are based not only on the facts of record before the Referee, but also on such additional facts as may be for the first time established during the hearing on review. In re American Mail Line, Ltd., supra, 115 F.2d at pages 198–199; and see in general: Powell v. Wumkes, 9 Cir., 1944, 142 F.2d 4; In re Rosen & Sons, Inc., 3 Cir., 1942, 130 F.2d 81; State Central Sav. Bank v. Hemmy, 8 Cir., 1935, 77 F.2d 458, 459; Forman v. Jacobs, 1 Cir., 1928, 26 F.2d 764. Even where testimony taken on review is "cumulative only, there * * * arise questions of credibility and weight * * * which * * * require a reappraisal by the court of the entire testimony free of the rule requiring acceptance of the findings of the [Referee]" [In re American Mail Line, Ltd., supra, 115 F.2d at pages 198–199].

For reasons heretofore given, that portion of the Referee's order under review, allowing Messrs. Quittner and Zimmerman fees of $3,767 for services rendered as special counsel for the receiver, must be reversed, and they will be denied any allowance as compensation or fees for such services as they may in fact have rendered while employed by the bankrupt estate.

What has been said makes it unnecessary to consider whether there was a full and accurate disclosure of the facts as to the "necessity for employing counsel at all" [General Order 44, 11 U.S.C.A. following section 53], or whether Messrs. Quittner and Zimmerman represented interests adverse to the bankrupt estate [ibid], or whether the $3,767 fee allowed by the Referee was excessive.

Turning now to the further contentions of the petitioner on review that the Referee committed clear error [1] by denying Mr. Harris any fee at all for so-called extraordinary services purportedly rendered on behalf of the bankrupt estate; and [2] by allowing him only $900 for ordinary services as attorney for creditors.

■ Although it appears that Mr. Harris in fact rendered services of consequence for the receiver-trustee, and so for the bankrupt estate, the record also discloses that on two different occasions —the first when the proceedings were scarcely two months old—the Referee was requested to authorize his employment as attorney for the receiver, and on both occasions expressly refused on the grounds that Mr. Harris represented interests adverse to the bankrupt estate. Neither Mr. Harris nor the receiver sought review, and both orders became final. In re Sterling, 9 Cir., 1942, 125 F.2d 104, 107; Clark v. Milens, 9 Cir., 1928, 28 F.2d 457.

■ It is settled that an attorney for creditors, who undertakes to act also as attorney for a receiver or trustee, must first obtain approval of the Referee in compliance with General Order 44 [11 U.S.C.A. following section 53] and, in the absence of such approval, no compensation is allowable, however valuable and

beneficial to the bankrupt estate the attorney's services may have been. Cf.: In re National Tool & Mfg. Co., 3 Cir., 1954, 209 F.2d 256, 257; Beecher v. Leavenworth State Bank, supra, 184 F.2d at pages 500–501; In re Floore, 5 Cir., 1926, 16 F.2d 113; In re F. P. Newport Corp., D.C.S.D.Cal.1955, 137 F.Supp. 58, affirmed Newport v. Sampsell, 9 Cir., 1956, 233 F.2d 944.

Petitioner's second contention, that the Referee committed clear error by allowing him only $900, for ordinary services as attorney for creditors, is likewise without merit.

■ An attorney for bankruptcy creditors is of course entitled to "reasonable compensation" for his services. In re Barceloux, supra, 74 F.2d at pages 291–294; In re Owl Drug Co., supra, 16 F.Supp. at page 142. The factors to be considered in fixing "reasonable compensation" have been held to include: "(1) The time which has fairly and properly to be used in dealing with the case; because this represents the amount of work necessary. (2) The quality of skill which the situation facing the attorney demanded. (3) The skill employed in meeting that situation. (4) The amount involved because that determines the risk of the client and the commensurate responsibility of the lawyer. (5) The result of the case, because that determines the real benefit to the client. (6) The eminence of the lawyer at the bar or in the specialty which he may be practicing." Sampsell v. Monell, 9 Cir., 1947, 162 F.2d 4, 6.

■ Clearly then, the Referee's determinations here were largely factual in nature [Head v. Hargrave, 1881, 105 U.S. 45, 26 L.Ed. 1028; and see 3 Collier on Bankruptcy § 62.29 at 1596–1570 (14th Ed. 1957), and so are not to be upset unless found to be "clearly erroneous" [General Order 47, 11 U.S.C.A. following section 53; In re American Mail Line, Ltd., supra, 115 F.2d at page 198], as it is the Referee, charged with responsibility of supervising day to day administration of the bankrupt estate, who is most familiar with and hence best able to appraise "the value and extent of the services rendered." In re Folker, D.C. E.D.Mich.1942, 47 F.Supp. 522; In re Melhado, D.C.W.D.Pa.1932, 1 F.Supp. 591; In re American Range & Foundry Co., D.C.D.Minn.1926, 41 F.2d 845, 847.

■ The evidence received on review added nothing of consequence as to "the value and extent" of Mr. Harris' services as attorney for creditors. So the relevant facts now of record are substantially the same as those upon which the Referee based his order allowing a fee of $900. It cannot be said after a review of the record that the Referee's allowance was "clearly erroneous."

What has been said may serve as findings of fact and conclusions of law. Fed.R.Civ.P. 52(a), 28 U.S.C.A. To the extent not inconsistent with the foregoing, the findings of fact and conclusions of law on which the Referee predicated the order of November 21, 1957, under review are hereby confirmed. That portion of the order of November 21, 1957, allowing compensation to Messrs. Quittner and Zimmerman as special counsel for the receiver, is hereby reversed, and their petition for fees as such special counsel is hereby denied. That portion of the order denying Mr. Harris compensation for services rendered the receiver-trustee is hereby confirmed, as is the order allowing him a fee of $900 as attorney for creditors.

It is so ordered.