Matter of **BARRY YAO COMPANY**, a co-partnership consisting of Barry Baruch, aka Bill Barry and Jimmy Yao, co-partners; and Barry Baruch, aka Bill Barry, an individual; and Jimmy Yao, an individual, Bankrupts.

No. 62410.

United States District Court
S. D. California,
Central Division.
Aug. 11, 1959.

728

Bertram S. Harris, Los Angeles, Cal., pro se.

J. E. Simpson, Los Angeles, Cal., for respondent on review Francis S. Quittner.

Joseph A. Ball, Long Beach, Cal., for respondent on review Milford S. Zimmerman.

MATHES, District Judge.

Respondents move for a rehearing of the petition for review, which resulted in an order denying Messrs. Quittner and Zimmerman any compensation for their services as special counsel for the receiver on the ground that their failure to set forth fully and accurately in their petition for fees "the value and extent of the services rendered," as required by § 62, sub. d of the Bankruptcy Act, amounted to a material misrepresentation of the facts. 11 U.S.C.A. § 102, sub. d; see In re Barry Yao Co., D.C.S.D.Cal. 1959, 172 F.Supp. 375.

In support of this motion it is first argued that, upon the review of a referee's order allowing fees, the court is restricted to a consideration of issues raised before the referee and by the petition for review, and may not properly consider other questions *sua sponte*. This contention is without merit. Both precedent and policy sustain the rule that a "District Court is empowered at any time before the estate is closed to review, without petition, the action of the referee in administrative matters such as the allowance of compensation." Goodman v. Street, 9. Cir., 1933, 65 F.2d 686, 687; In re F. P. Newport Corp., D.C.S.D.Cal. 1955, 137 F.Supp. 58, 60, affirmed Newport v. Sampsell, 9th Cir., 1956, 233 F.2d 944, and see 3 Collier on Bankruptcy, §. 62.12 at 1481 (14th Ed. 1941).

But it is insisted that, as a matter of fairness, Messrs. Quittner and Zimmerman were entitled to but were not given notice of and the opportunity to meet the claims and contentions upon which the court predicated the order on review. 172 F.Supp. at page 384. This insistence overlooks the fact that. the referee, in his certificate on review, stated "the question involved is whether or not these allowances are proper and reasonable", and the further fact that. the petition on review expressly challenged the allowance of $3,767 to Messrs. Quittner and Zimmerman as "manifestly disproportionate", and alleged that they should at most take but $400 because of "the very little work done by them." [172 F.Supp. 377.]

To be added is the circumstance that, while prior to the April, 1958 hearing on. the petition for review, questions of misrepresentation or concealment had not been expressly raised, during that hearing Mr. Zimmerman testified that the

will contest, which he and Mr. Quittner were employed as special counsel to conclude, had been "tentatively" settled even before their employment. And the respondents on review must have been aware that, without even mentioning any prior offer of settlement, they had emphasized in their petition for fees the asserted difficulties and uncertainties which allegedly faced them in their efforts to recover anything at all in the will contest for the bankrupt estate. So questions as to possible misrepresentation and concealment became patent during the course of the proceedings on review, and the respondents then had the opportunity to present anything they wished to present on the subject.

The District Courts have of course broad discretionary power, particularly in non-jury proceedings such as the bankruptcy proceeding here, to grant a rehearing, receive further evidence, and alter or amend findings of fact, conclusions of law and, if appropriate, to enter any order or judgment that justice may require. Fed.R.Civ.P. 59(a) (2), 28 U.S.C.A.; cf.: Wayne United Gas Co. v. Owens-Illinois Glass Co., 1937, 300 U.S. 131, 135–138, 57 S.Ct. 382, 81 L.Ed. 557; Welch v. Grindle, 9 Cir., 1957, 251 F.2d 671, 676–677; United States v. Bransen, 9 Cir., 1944, 142 F.2d 232, 235; see: 6 Moore's Federal Practice §§ 59.05, 59.07 (2d ed. 1953); General Order 37, 11 U.S.C.A. following section 53; 2 Collier on Bankruptcy, supra, § 25.07. However, a foremost consideration in the exercise of this discretionary power is whether or not there is any likelihood that a rehearing would bring a different result. The inquiry properly turns, then, to what the respondents upon review would expect to show upon a rehearing if one were granted.

Respondents say they seek a rehearing to establish that Mr. Zimmerman was in error when he testified "that within a very short time, a matter of days, or maybe a week or two more after May 11, 1955 there was tentatively an agreement" to settle the will contest, and those things "that happened subsequently" were merely "implementations". It will be shown, respondents say, that the actual facts were as follows: that Mr. Zimmerman's offer of May 11, 1955, to settle the will contest for $15,000 was in effect rejected by Mr. Scheinman for the decedent's estate who, on May 17, 1955, wrote in reply proposing a settlement on substantially different terms; that this counteroffer was not accepted by Mr. Zimmerman nor by any of the other necessary parties; that, like the May 11th offer, this counteroffer was merely a "step in the negotiations"; that a day or two prior to July 14, 1955 (two weeks after Messrs. Quittner and Zimmerman were employed as special counsel by the bankrupt estate), the attorneys for all interested parties, except Mr. Harris (petitioner on review) for the creditors, orally agreed that the will contest should be settled for $12,500, and on July 14th committed the proposal to writing; that on July 22, 1955, Mr. Harris as attorney for the creditors rejected the $12,500 proposal; that from late July until December of 1955 various negotiations took place in an attempt to obtain Mr. Harris' consent on behalf of the creditors to the $12,500 proposal; that agreement was finally reached in December, by increasing the settlement figure for the will contest to $15,000; and in January of 1956 the settlement was consummated with approval of both the probate court and the bankruptcy court.

Assuming arguendo the truth of all the foregoing, it cannot be overlooked that nowhere in their petition for fees did Messrs. Quittner and Zimmerman disclose those alleged facts. Instead, they emphasized the claimed difficulties and uncertainties involved in reaching any settlement at all in the will contest, and sought a contingent-fee allowance on the theory that any recovery at all was not only contingent but indeed doubtful. A comparison of respondents' petition for fees with their affidavits in support of the pending motion for rehearing reveals the failure of any fair disclosure in the petition for fees. So even if the facts sought to be proved on rehearing

were established, the petition for fees would still fall short of setting forth "the value and extent of the services rendered" while employed by the bankrupt estate, as required by § 62, sub. d of the Act.

It is urged, however, that the referee was not deceived, since he was orally informed by Mr. Quittner of the course of the negotiations with respect to the will contest, and was hence fully apprised. As to this, respondents seek opportunity on rehearing to show that prior to their employment as special counsel, Mr. Quittner personally contacted Referee Head in June of 1955 and orally advised him that Mr. Zimmerman had already discussed settlement of the will contest; also that during the negotiations following their employment by the bankrupt estate, Mr. Quittner similarly orally apprised Referee Head of the course of the negotiations. Significantly, however, it is not contended that the referee was ever advised of either the written offer of settlement on May 11, 1955, or the counteroffer of May 17, 1955.

■ The burden of the argument advanced on this point is that even if by their petition for fees respondents omitted to set forth in writing "the value and extent of the services rendered", oral disclosures made over two years before the referee entered his order allowing fees were sufficient to cure any defect in the petition. But § 62, sub. d of the Act expressly directs that an attorney for a receiver or trustee "shall file with the court his petition setting forth the value and extent of the services rendered * * *." [11 U.S.C.A. § 102, sub. d.] For obvious reasons, a two-year old conversation with the referee cannot satisfy the requirements of the statutory mandate that requisite disclosures be set forth in the petition itself. To hold otherwise would give approval to slipshod and loose practices, once all too often characteristic of bankruptcy proceedings, which have been thoroughly condemned by the courts. Cf.: In re H. L. Stratton, Inc., 2 Cir., 1931, 51 F.2d

984, 987, certiorari denied Jonas & Neuburger v. General Motors Acceptance Corp., 1932, 284 U.S. 682, 52 S.Ct. 199, 76 L.Ed. 576; In re California Land Buyers Syndicate, D.C.S.D.Cal.1938, 22 F.Supp. 183, 186–187.

■ What § 62, sub. d calls for is a full and accurate disclosure in the petition of the material facts as to "the value and extent of the services rendered"; that is to say, a disclosure sufficient to give court and creditors a basis for fair appraisal of the services. And failure to disclose, "at the time or in the manner required", a material circumstance bearing on the right to fees has been held to justify denial of compensation for services as attorneys for a receiver. See In re Woodruff, 9 Cir., 1941, 121 F.2d 152, 155; In re Rogers-Pyatt Shellac Co., Inc., 2 Cir., 1931, 51 F.2d 988, 991; but see Connelly v. Hancock, Dorr, Ryan & Shove, 2 Cir., 1952, 195 F.2d 864, 868.

■ But respondents say there was no conscious wrongdoing—no intent to deceive. Again assuming arguendo that this is true, the fact still remains that there was here a substantial failure of disclosure and a resulting material misrepresentation of "the value and extent of the services rendered" in contravention of duties imposed by § 62, sub. d of the Act. And it has long been recognized that where attorneys deal adversely to their clients, as in seeking fees, scienter or an intent to deceive is unnecessary; mere breach of a duty of disclosure is sufficient. Baker v. Humphrey, 1879, 101 U.S. 494, 502, 25 L.Ed. 1065. Accordingly, in requiring strict compliance with rules regulating conduct of attorneys relative to bankrupt administration, the courts have emphasized the violation of duties imposed and have treated as irrelevant questions of moral culpability, scienter and the like. Albers v. Dickinson, 8 Cir., 1942, 127 F.2d 957, 960, 961; In re Rogers-Pyatt Shellac Co., Inc., supra, 51 F.2d at page 991; In re H. L. Stratton, Inc., supra, 51 F.2d at page 987; In re California Land Buyers Syndicate, supra, 22 F.Supp. at

pages 186–187; cf: Beecher v. Leavenworth State Bank, 9 Cir., 1950, 184 F.2d 498, 500–501; In re Woodruff, supra, 121 F.2d at page, 155.

 Respondents next point to the fact that, in reaching the challenged decision of March 31, 1959, the Court did not consider the "equitable fund theory". They argue that this theory should apply in bankruptcy proceedings and suggest that by virtue thereof they are entitled to be compensated from the fund which they recovered for the bankrupt estate. It is true that "in courts of equity * * * a trust fund which has been recovered * * * may be charged with the costs and expenses, including reasonable attorney's fees, incurred in that behalf * * *." United States v. Equitable Trust Co., 1931, 283 U.S. 738, 744, 51 S.Ct. 639, 641, 75 L.Ed. 1379; see: Sprague v. Ticonic Nat. Bank, 1939, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184; Arenas v. Preston, 9 Cir., 1950, 181 F.2d 62, 64; United States v. Anglin & Stevenson, 10 Cir., 1944, 145 F.2d 622, 624; In re Chicago, M., St. P. & P. R. Co., 7 Cir., 1943, 138 F.2d 433, 436. It is also true of course that for many purposes bankruptcy courts have been held to be essentially courts of equity. Pepper v. Litton, 1939, 308 U.S. 295, 304, 60 S.Ct. 238, 84 L.Ed. 281. And it is well established that recovery of funds for the bankrupt estate is one factor among others justifying an allowance of attorneys fees. In re Barceloux, 9 Cir., 1934, 74 F.2d 288, 289, 294; In re Owl Drug Co., D.C.D.Nev.1936, 16 F.Supp. 139, 142, affirmed sub nom. Cohn v. Elder, 9 Cir., 1937, 90 F.2d 823.

On the other hand, it is equally clear that in order to be entitled to fees for their services, attorneys for a receiver or trustee must comply with the dictates of the Bankruptcy Act and applicable General Orders; and that, absent compliance, no fees should be allowed. Beecher v. Leavenworth State Bank, supra, 184 F.2d at pages 500–501; In re Woodruff, supra, 121 F.2d 152; In re California Land Buyers Syndicate, supra, 22 F.Supp. at pages 186–187. Nothing in the "equitable fund doctrine" itself, or in the reasons underlying it, would justify a different result in the proceedings at bar; for an attorney who has materially misrepresented "the value and extent" of his services has no claim in equity or good conscience to compensation, however beneficial his services may have been to the bankrupt estate. Cf. Weil v. Neary, 1929, 278 U.S. 160, 173–174, 49 S.Ct. 144, 73 L.Ed. 243; Gochenour v. Cleveland Terminals Bldg. Co., 6 Cir., 1944, 142 F.2d 991, 995; In re Pedisich, D.C.N.D.Cal.1951, 103 F.Supp. 199.

 Since, for the reasons stated, the order on review dated March 31, 1959, would have to stand even if respondents should succeed in proving all that they seek to prove upon a rehearing, the policy of promoting finality of litigation requires that a rehearing be denied. Cf. United States v. Bransen, supra, 142 F.2d at page 235; Aerated Products Co. of Los Angeles v. Aeration Processes, D.C.S.D.Cal.1950, 95 F.Supp. 23, 30; Fed.R.Civ.P. 61.

What has been said on respondents' motions for a rehearing may serve to supplement the findings of fact and conclusions of law of March 31, 1959, all of which are now confirmed. Fed.R.Civ.P. 52(a), 59(a), 28 U.S.C.A. The orders then made will also be confirmed, and respondents' motions denied.

It is so ordered.